C. M. STEBBINS *et al.* v. W. W. GUTHRIE AND A. H. HORTON.

*Error from Atchison County.*

The decision in Bemis v. Becker [1 Kans., 248], that "where one state adopts a law from another, the judicial construction given to the statute in the state wherein it originated, follows it to the state of its adoption," *confirmed,* and the act "for the relief of occupying claimants," of March 4, 1862 [Comp. L., 121], *construed* by the light of Lessees of Davis *v.* Powell [13 Ohio, 320], and Shuler *v.* Magin [2 Ohio, 236].

Where an occupying claimant held under a purchase at a sale, under an order of sale, and also held under a certificate and deed of sale for taxes, and where plaintiffs below brought one action to set aside the sale under the order, another to set aside the tax deed and certificate, and a third to recover title, in all three of which actions they recovered, and where the defendants below claimed their improvements under said act for the relief of occupying claimants, it was

*Held* that the case, as it stood in court, was as though but one suit had been brought in the court below.

*Held* that, being in possession of, and holding land under any sale for taxes authorized by law, entitled the occupant to the benefit of the provisions of the "occupying claimants" act, if his possession has been obtained

23

without fraud or collusion; and fraud or collusion must be affirmatively shown, to defeat the claim.

*Held* that a purchaser at a tax sale becomes the owner at the time of the purchase, his title being only defeasible by redemption for two years.

Holding under a certificate of sale, without a tax deed, *semble*, is sufficient to entitle the holder to the benefits of the occupying claimants act [§ 2 Comp. L., 121]; and a fraudulent holding of possession will not be inferred from a vague description of the premises in the certificate.

A defective title only will enable an occupant to claim.

The spirit of the law is, that the person receiving the benefits of improvements honestly made on lands, shall make compensation. The act rests on the broadest equity, and should receive a liberal construction.

*Held* that where the claimant held under a certificate of sale for taxes in which the description was vague, but at the time of the commencement of the action held under a tax deed, with ample description, obtained after improvements made, it was sufficient to entitle him to the benefits of the provisions of the law.

A claim of an occupying claimant for value of his improvements, first introduced by supplemental answer, *held* made in time.

*Semble*, that where a tax deed is acknowledged, it is sufficient without witnesses.

The principal questions involved in this case arose out of an application on the part of defendants below for the remedies given to occupying claimants in the act of March 4, 1862. The action was commenced August 25, 1866, to recover possession of fifty-four feet off the east side of lot number seven, block twelve, in Atchison City, together with rents and profits. A supplemental petition was filed July 17th, 1867, claiming $2,000 additional damages for rents, &c., since the commencement of the action. The defendants thereupon filed a supplemental answer, in which they allege that "they admit that they have held possession of said premises since the commencement of this action, and for a long time before, and that they have received certain rents and profits of the same since the commencement of this suit.

2. "And as a further and second answer, defendants say, by way of counter-claim for rents and profits, that they took possession of said real estate, in good faith, in first part of May, 1866, under and by virtue of a tax certificate, issued by the treasurer of said county, numbered 241, dated May 23d, 1864, and issued to John M. Price, the purchaser of said premises at a tax sale, of the date (of) last aforesaid; and which certificate was afterwards, to wit, on the 8th day of May, 1865, duly sold and assigned by said John M. Price to these defendants, and upon which certificate the county clerk of said county did, on or about the 14th day of July, 1866, issue a tax deed of said premises to defendants, as required by law.

"Defendants further say that after they had taken possession of said premises, under and by virtue of the titles and proceedings aforesaid, they did, in good faith, and in the full conviction that their title to said premises was good and perfect, proceed to erect a two-story brick building upon said premises, which were then entirely vacant and without improvements; and did make lasting and valuable improvements upon said premises, of the value of eight thousand dollars ($8,000); and said defendants have also paid taxes on said premises to the amount of about five hundred dollars ($500), since taking possession of the same. Therefore the said defendants present and show to this court, as a counter-claim or set-off to any rents and profits which may be found due plaintiffs, the following sums, for which they have a lien upon said premises, to wit: Lasting and valuable improvements, $8,000," &c.

To this a reply was filed denying specifically, and

alleging that the tax sale, certificate and deed had been set aside, and adjudged void.

Other facts in the case appear in the opinion of the court.

*B. F. Stringfellow, C. G. Foster* and *P. T. Abell,* for plaintiffs in error.

*W. W. Guthrie* and *A. H. Horton, per se.*

*Stringfellow, Foster* and *Abell,* contended:

1. The "occupying claimants act," of March 4th, '62 (*Comp. L.,* 121), provides for a successful claimant as well as for an unsuccessful occupying claimant. There could not be a successful claimant unless the title of the occupying claimant was defective. This statute was made for the relief of parties who, without fraud or collusion, take quiet possession of lands, and make lasting improvements thereon, and can show any of the muniments of title named in the act, to justify the possession.

2. The court had already adjudged the defendant's title defective and bad. And section 3 of the act provides that the court rendering such judgment, shall cause a journal entry thereof to be made, &c. The plaintiffs deny that defendants took possession in good faith, but they offered no evidence to sustain the charge. The evidence shows that defendants acted in good faith, and believed their title to be perfect. The burden of showing fraud and collusion is on the plaintiffs. In absence of a showing of bad faith, good faith and quiet possession on the part of the defendants must be conceded. The findings of the court below concede those

points.   Then the only question to be considered is, did the defendants show any of the evidences of title mentioned in sections 1 or 2?

3. They showed a tax sale, a tax certificate, and a tax deed issued thereon, duly recorded ; and the court found that claimants had paid legal taxes, and allowed them therefor.   Under section 2, there could be no occupying claimant, unless, for some reason, the tax sale was made invalid.   The law was made for cases where the supposed title turns out to be invalid.   It might be inferred from the findings of the court, that using the words, "equity of redemption," in the order of sale, cut some figure in the case.   The mortgagor's estate was formerly called his "equity of redemption ;" now it is the "legal estate."   So it was, in reality, the legal estate that was sold.   1 *Kas.*, 281; 2 *id.*, 390.

4. It was a principle in equity to allow a *bona fide* occupant the value of his improvements on real estate to be deducted from rents and profits.   (1 *Story Eq.* [*4th ed.*], §§ 385, 388, 389, 395, 397, 655 ; 2 *id.*, § 799, *notes* 1237, 1238–9 ; *Putnam* v. *Ritchie*, 6 *Paige*, 390, 405–6 ; *Green* v. *Riddle*, 8 *Wheat. R.*, 1, 79–82 ; *Bright* v. *Boyd*, 1 *Story R.*, 478, 494–5 ; 3 *Paige*, 470, 546, 555 ; 1 *John.*, ch. 385 ; *Rawle on Cov.*, 94, 328, *notes.*)   A *bona fide* occupant might maintain an independent action in equity for the value of his improvements.   (2 *Story Eq.* [*4th ed.*], §§ 799, 1237.   *Notes and cases cited above.*)   Parties are allowed, under our code, to set up and unite both legal and equitable claims and defenses, or either.   (§§ 89, 102.)   Thus an equitable claim, counter-claim, or set-off, may be set up against a legal claim ; and if the equitable claim exceeds the legal claim, judgment is rendered for the balance. The code facilitates the manner of pleading and ob-

taining rights in equity. If these parties were entitled in equity to these improvements, they are entitled to them now; and the occupying claimant act has simplified and made more definite and certain the equitable rights heretofore recognized by the courts of equity. *Nash,* 75–6.

5. The title shown by the occupants clearly brought them within the provisions of the 2d section of the occupying claimant act. *a.* They were in quiet possession of, and holding said land under a tax sale, and when the improvements were made, they held a certificate of the treasurer, of said sale. And when the plaintiffs bought the property, the occupants had a tax deed, and that duly recorded. (*Lessee of David J. Beardsley* v. *Erastus Chapman,* 1 *O. S.,* 118; *Robert W. McCoy* v. *Wm. Grandy,* 3 *O. S.,* 463; *Harrison* v. *Castner,* 11 *O. S.,* 339.) In that case the court say: "According to the language of our decisions under the statute, a belief that the land is his own has been considered sufficient to protect the occupant." "The equity of the statute embraces all improvements, made in the honest belief of ownership, if at the time of rendition of judgment the occupant is in possession, under such a title as brings him within the meaning of the statute." (*Lessee of Davis* v. *Powell,* 13 *Ohio R.,* 308, 320; *Longworth* v. *Wolfington,* 6 *id.,* 9; *Lessee of Shaler* v. *Hagin,* 2 *id.,* 235; 19 *id.,* 57; 11 *id.,* 36; 11 *O. S.,* 339; 2 *Pet.,* 592.) In the 13th Ohio, the court say: "The statute is in the present tense." "The exhibition of title is at the rendition of the judgment." (*p.* 320.) These authorities have settled the law beyond a doubt, that the occupant can hold his improvements, when made before a tax deed or sheriff's deed was issued, provided the occupant has

such title at the rendition of the judgment. These cases effectually dispose of the 2d and 3d conclusions of law of the court below on the occupying claimant act. (1 *Kans.*, 226, 249.) *b.* The fourth, and last conclusion of the court below, on the same act, is obnoxious to the words of the act as well as to good common sense, but that fact, also, has been adjudicated, and is no longer an open question. *Longworth* v. *Wolfington*, 6 *Ohio R.*, 9.

*Guthrie & Horton*, for themselves, submitted.

1. A tax certificate is nothing but an incumbrance for two years; it confers no title, and hence, to one holding under such certificate, no adverse title could accrue; but the question in this case, arises under the act for the relief of occupying claimants.

2. Unless this question was properly before the court below, it is not reviewable here. The question of the right to claim, under that act, could only be raised after eviction by an adverse title. (1 *O. S.*, 120; *Harrison* v. *Eastman*, 11 *O. S.*, 347.) The correct practice is here pointed out. *p.* 339.

3. The tax certificate was void: *a.* For indefiniteness of description of the lot. *b.* The law under which the tax was levied, was unconstitutional and void, and has been so held. *Bartholow* v. *City of Atchison*, *ante*, *p.* 124.

4. The treasurer's books, of themselves, are not sufficient authority for collecting a tax.

5. No principles of equity could avail plaintiffs in error; they can only claim by virtue of the statute. The tax certificate, as shown, was a nullity, and had been so held by the district court; no tax was due at

the time of the sale ; no such property as described
therein was ever sold for a valid tax—the "east part
of lot 7 bl'k 12," means nothing, as a description.

6. It is for the claimants to bring themselves within
the provisions of the statute ; they must show a *bona
fide* occupancy, and an utter absence of fraud and col-
lusion. This was not done.

7. The tax certificate being a nullity in law, the
claimants are presumed to have known it, and could
get no rights under it. (11 *How.*, 414; 18 *Curt.*, 665.)
During the time allowed for redemption, no right of
possession could be acquired without consent of the
owner of the fee in the lot, or his lessee ; entry without
such consent, does not give such quiet possession,
without fraud, as is contemplated in the act. The
deed, founded on a sale for a void tax, could not help
the matter. *Stat.*, '63, *p.* 100 ; *Comp. L.*, 876, §§ 7,
10 ; 355, § 12 ; *Donohue* v. *Veal*, 19 *Mo.*, 331 ; 3 *O. S.*,
469.

8. The object of the "occupying claimants act" is
to protect those who improve lands on an apparent
title, which, on its face, gave the right of possession,
and when that possession is obtained as the law pre-
scribes, and not to protect speculation by squatting
trespassers. As a basis of the claim, such color of
title must be affirmatively shown as would constitute
an adverse title. This was not done. No trespasser
can be in quiet possession, nor obtain a right thereto.
(*McCoy* v. *Grundy*, 3 *Ohio S.*, 466.) Possession under
a mere lien or incumbrance is not quiet. (*Nepeau* v.
*Doe*, 2 *Smith's Cas.*, 471-2, 566-7.) Holding a lien
against the owner is not holding by a title adverse to
the owners. (*Moore* v. *Brown*, 11 *How.*, 414.) For
these reasons it was not possible for plaintiffs in error

to have, by any proof, maintained a claim for improvements.

9. But had there been a foundation established, the plaintiffs in error did not bring themselves within the provisions of the law. Our statute is similar to that of Ohio. It has been decided that the claim can be maintained only where the evidence named in the statute is produced. (*Beardsley* v. *Chapman*, 1 *Ohio S.*, 118; 4 *Metc.*, 323, 324.) The evidence in the case shows that plaintiffs in error did not believe they had a good title. One knowing the quantity of his estate to be less than a full title, cannot come within the act. (1 *Ohio S.*, 123.) Only acts of good faith are protected. Plaintiffs in error ask relief through an equity statute. They must show themselves to have done equity. (*See also* 11 *O. S.*, 339.) The evidence shows the reverse. They sought and purchased incumbrances from four sources, and though utterly void, sought to foist them upon the court as valid; they covered every inch of the lot with an expensive block; and all this without having conferred with the owner. Theirs was merely an effort to make the poor African owner greatly their debtor, and then to rob him under cover of a statute made for the enforcement of equity—to crush him by the weight of their purse. Plaintiffs in error cannot plead mistake (*McCoy* v. *Grundy*, 3 *Ohio S.*, 466; 33 *Mo.*, 386), nor a title that is null. 16 *Ill.*, 328.

10. The tax certificate was not only void in law, but on its face. A voidable title may be defective and adverse, but if void it can be neither, and the law presumes the holder to know its worthlessness. *Moore* v. *Brown*, 11 *How.*, 414; 18 *Curt.*, 665, 425; *Irving* v. *Brownell*, 11 *Ill. R.*, 402; *Curry* v. *Hinman*, 11 *Ill.*

*R.*, 420 ; *Jackson* v. *Moore*, 18 (*N. Y.*) *Johns.*, 441; *Rowland* v. *Doty*, 1 (*Del.*) *Harrington*, 3–11; *Stewart* v. *Aten's Lessee*, 5 *Ohio S.*, 257, 261; *Barker* v. *Hesseltine*, 27 *Maine*, 354 ; *Turney* v. *Yeoman*, 16 *Ohio*, 24 ; *Richardson* v. *State*, 5 *Blackford* (*Ind.*), 51; *Head* v. *James*, 13 *Mich. R.*, 641; 15 *Ohio*, 134, 155 ; *Blckw. Tax Tit.*, 578.

11. In *ex parte* proceedings, no rights attach unless *stricti juris.* 3 *Coms.* (*N. Y.*), 401.

12. Again, section 2 of the occupying claimants act is unconstitutional. It attempts to deprive a person of his property without due process of law—1. In attempting to give the right of possession and use of his property without due course of law therefor. 2. In attempting to subject the land to two burdens for one default—1, use, and of course, rents ; 2, a high penal interest. Taking the use of property is as much in violation of art. 5, amended U. S. Const., as to take the fee. (*McCoy* v. *Grandy*, 3 *O. S.*, 468; *Sedg. Con. Law*, 610 ; *Weller* v. *St. Paul*, 5 *Min. R.*, 100.) The entire act is a great innovation, and not to be extended by implication. *McCoy* v. *Grandy*, 3 *O. S.*, 466, 471 ; 2 *Peters's R.*, 492 ; 8 *Curt.*, *p.* 198.

*By the Court,* KINGMAN, C. J.

This was an action for the recovery of real property, brought by the defendants in error, to recover the east part of lot 7, in block 12, in the city of Atchison. The cause was tried by the court, who found the right of possession in the defendants in error. The plaintiffs in error claimed the benefit of the statute entitled "An act for the relief of occupying claimants of land,"

which demand the court refused, and the plaintiff in error brings the case to this court for review.

The court found and stated the conclusions of fact, and from them deducted the conclusion of law, that the applicants were not entitled to the benefit of said act.

The facts found are substantially these: On the 27th day of April, 1865, Yates was owner of the property in controversy, which he had bought from McCubbin. There was a mortgage on the property for something over $1,200, made by Yates to McCubbin.

Stebbins & Porter on that day bought the mortgage for the amount due thereon. On the 29th day of the same month, they bought of Bartholow & Brother a judgment which was obtained against Yates by an attachment on this lot, for two hundred and twenty-seven dollars, under which judgment the property was sold on the 19th day of May, 1865, and Stebbins and Porter became the purchasers. This sale was confirmed on the 13th day of July, 1865, and a sheriff's deed made September 3, 1866.

On the 27th day of April, 1865, Stebbins & Porter bought a tax sale certificate of the same property, certifying that the premises had been sold for taxes on the 24th day of May, 1864; and on the 14th day of July, 1866, a tax deed was made to them therefor.

The judgment under which the sale was made was, upon proceedings duly had, declared null and void, at the December term, 1866, of the district court of Atchison county. The tax deed and certificate were, at the same term this case was tried, in proceedings duly had, declared null and void.

In the tax certificate the lot was described as "lot E pt. 7, block 12, in old Atchison, in Atchison city,

situated in Atchison county, Kansas." In the tax deed it was fully described.

Stebbins & Porter took possession of the premises about the 1st day of June, 1865, and commenced building, and by the middle of August thereafter had completed lasting and valuable improvements thereon, costing them $7,500, and had remained in possession ever since.

These are briefly all the facts necessary to state for a full understanding of the only points we shall decide in the case. The mortgage cuts no figure in the case, as it was not foreclosed.

We shall abstain from any consideration of the judgment, and the sale, and sheriff's deed thereunder, as the view we take of the occupying claimant act is decisive of this case on the tax sale.

The occupying claimant law of this state is copied from that of Ohio, with some additions, not affecting the case before us. This law, enacted many years ago in that state, has been passed upon by its highest courts in almost every conceivable aspect of it, and received a judicial construction, so uniform and consistent, and in such entire harmony with the language of the statute, and the equitable objects sought to be attained by its enactment, that it will relieve this court from any difficulty in its application to the case before us. In the case of Bemis *v.* Becker and others (1 *Kan.*, 248), this court held :

Where one state adopts a law from another, the judicial construction given to the statute in the state where it originated, follows it to the state of its adoption. This well known principle stands upon the ground that the legislature of the state is presumed, in adopting the law, to take it with the construction pre-

viously placed upon it, and such will be considered the legislative intent, unless the language of the law manifestly indicates another construction. There is no such trouble with the case under consideration.

One of the conditions pointed out in the first section is : being in possession of, and holding any land under any sale for taxes authorized by the laws of the state, entitle the occupant to the benefit of the provisions of the statute, if his possession has been obtained without fraud or collusion.

It will be seen that in this section it is only made necessary that the occupant holds under any sale for taxes ; but lest it should be contended, as it was in this case, that no sale was perfected until the deed was made, thus leaving property unimproved and unproductive for two years, it is further provided in section two, which is a legislative construction of section one, that if the claimant holds a certificate of sale of the lands from a collector of taxes, or county treasurer, &c., he shall be deemed to have sufficient title to said land to demand the value of improvements made under provisions of the first section.

Now, the plaintiffs in error had such certificate at the time they made the improvements for which they demand compensation, and that, by the obvious terms of the law, entitled them to its benefits ; but the defendants in error object that the tax certificate was void, because it was declared so by the court. The findings do not show for what cause the court declared it void. It was declared in proceedings duly had, wherein these defendants were plaintiffs and the claimants were defendants. Why was such a suit brought ? The defendants in error are men learned in the law, and it would seem that they had some idea that there was

some show of title in the tax certificate, or they would not have sought to set it aside. The decision of the court in that case was, that the tax certificate should be held null and void. We are to presume that that judgment was right. It only imports, however, that for some cause, henceforth they are so held. And the experience of other states has shown that most titles held in that way would, upon proper proceedings had, be likewise declared void. Such a conclusion must be reached in some way, before the unsuccessful party can claim the benefit of the occupying claimant law. If the tax title was good, then the claimant under it would hold the property in litigation. A defective title only will enable a party to claim. The defendants in error preferred to test each claim of the plaintiffs in error, separately. They set aside the judgment in one suit, the tax certificate and title in another, and the right of possession was determined by a third. They take nothing by this. The law does not favor a multiplicity of suits. The case here is, as to this claim, as though but one suit had been brought, and the tax title held an insufficient defense. Then, nothing further appearing, the claimants were clearly entitled to the benefits of the law, both by its plain language, its manifest objects, and a long train of decisions in the state from whose statutes we adopted it. But it is further urged that, till the expiration of two years, no title is acquired, and therefore no rights can attach save that of a right to a deed, if the property is not redeemed. This is a misconception of the law. The purchaser at a tax sale buys the property then, becomes the owner then, the title only being defeasible by redemption for two years. But if we are wrong in this, the law we are considering makes the tax certificate such a title as

authorizes one holding under it to make improvements, and, if evicted, to get pay for them.

Again, it is said the tax certificate was void on its face, and so put the holder on his guard that he could not, in good faith, make any improvements thereunder; that the description was so vague and uncertain that it ought, at once, to have impressed the conviction on the mind of the buyer that it was void for uncertainty. And yet the counsel, who insists that the holder should perceive its worthlessness from its face, made an elaborate argument to this court, and cited many authorities, to show that it was void upon its face. Now, we have already said that it must be held in some way or other to be void, before a case can be made where the claimant can even ask the benefit of this act. But here the counsel insists that it was so apparently worthless on its face, that to make improvements under it showed a fraudulent purpose on the part of parties unlearned in the law. We might well place the counsel's acts, against his arguments. A defect so patent that not to notice it is evidence of fraud—proof of a purpose to commit a flagrant trespass when out of court—might well have been left to the decision of the court without extended argument, if the counsel's convictions on that point had been as strong as his assertions. By our view of the law of this case, it is unnecessary to decide whether the description in the tax certificate was sufficient or not. We only find it necessary to say that it was not so defective as would make the holder of it guilty of fraud by pretending to hold under it and making improvements on his holding. While the writer of this opinion has no doubt on this matter, he purposely leaves his views unexpressed, so that the uncertainty of each lawyer, who has not given the subject a care-

ful examination, may be our reason for holding that the point is not well taken in this case.

But whatever defect may have existed in the description of the property, by abbreviations in the tax certificate, or whether the certificate was evidence of ownership or not, still, when the case was tried, the defendant was in possession, under a tax deed, describing the land fully ; and this was sufficient to authorize the parties to claim the benefit of the law.

In the case of the Lessees of Davis *v.* Powell (13 O., 320), the court held that a defendant, holding possession under claim of title, will be allowed, under the occupying claimants law, as well for improvements made by him before his title commenced, as for those made after ; and the learned judge, who delivered the opinion, very justly observed :

"The equity of the statute embraces all improvements made in the honest belief of ownership, if at the time of rendition of judgment, the occupant is in possession under such title as brings him within the meaning of the statute. If such a state of facts exists as to call the statute into action, it never stops until it has worked out complete equity and justice, and embraced the entire improvement, beneficial to the successful claimant, and honestly made. Any other construction would permit an honest purchaser of land, buying from one without color of title, who sells from mistaken belief of ownership, to be swept out of the hard toil of years, expended in improvements made for the provision of his family or the repose of age. The statute is to be construed, whenever a case comes within its letter, that the person receiving the benefits and advantages of improvements shall make compensation. It rests on

the broadest equity, and may justly claim a liberal construction."

In the case of the Lessees of Shuler *v.* Majin (2 *O. R.*, 236), the same doctrine is held. Apply these principles to this case, and the tax deed alone would have been enough to justify the plaintiffs in error in claiming the benefit of the act. So that their claim, under the tax certificate—which they held when the improvements were made—or under the tax deed, was good, and should have been allowed by the court.

We do not refer to the numerous cases decided in Ohio, for they are found in almost every volume of the reports, and are not only accepted as constructions of our statute previous to our adoption of it, but also as fair and just applications of the provisions of the statute to the purposes for which it was enacted. We have examined with care the numerous decisions to which we were referred by the counsel for the defendant in error, but they are in explanation of statutes so wholly unlike ours, and so much more limited in their scope and application, as to throw little or no light upon the act we are considering.

Besides the main question which we have examined, the defendants in error claim there are other points which will preclude the plaintiffs in error from having the benefit of this act.

1. It is insisted that they made their claim at the wrong time. The claim was first made in a supplemental answer to a supplemental petition, a short time previous to the trial; and it seems, from the findings of the court below, was persisted in all through the proceedings, and is again insisted on here. We think the objection not well taken.

2. It is urged that there were no witnesses to the tax

deed.   We do not think, where a deed is acknowledged,
any witnesses are necessary ; but if it were otherwise,
of what avail would it be ?   It would show a defective
title, and it is only under such that the provisions of
this act apply.

Again, it is urged that the findings of the court do
not show good faith on the part of Stebbins & Porter.
To this we answer, that the statute requires that the
holding of the claimant should be without fraud or
collusion.   Now, in the absence of any finding or any
fact showing fraud, the presumption is, none existed ;
but as we followed the counsel beyond the facts found
to the testimony in the case, we were strongly impressed
that, instead of fraud or collusion, the contrary ap-
peared.

The judgment of the court below is reversed, and the
cause remanded for further proceedings.

All the justices concurring.