Millbank v. Ostertag.

---

## SAMUEL W. MILLBANK v. ANTON OSTERTAG.

1. EQUITY; *Possession Under Void Tax Deed; Improvements; Compensation.* M. held the legal title to a lot. The taxes for 1869 were unpaid, and the lot sold therefor to the county. The taxes of 1870 were also unpaid. Included in these was a sidewalk tax. The then owner of the lot brought injunction to restrain a sale for this sidewalk tax. Upon final hearing, this tax was adjudged legal, and the injunction denied. Thereafter, without further notice, the property was sold by the county treasurer for this delinquent sidewalk tax, and O. became the purchaser, receiving a certificate of sale. After this, under the five-year tax law

of 1872, the county treasurer sold the lot for the delinquent taxes of 1869, to R. Both O. and R. took deeds upon their purchases. In neither the certificate nor deed to R. was any mention of subsequent taxes, but simply of the taxes of 1869. R. deeded to M. under such circumstances as to make it simply a redemption from a tax sale, rather than a purchase of a tax title. Subsequently, the lot being vacant, O. took possession and put up a building. About the time this building was completed, M., in the night-time, forcibly broke it open and took possession. In an action by O., the district court held that O.'s tax title was invalid, and upon the cross-petition of M., entered a decree quieting his title as against O., but upon condition that he first paid the sidewalk tax and interest to O., and also the value of the improvements made by him; and further decreed that upon his failure to pay such sums, they be declared liens upon the lot, and it be sold to satisfy them. The costs were divided. *Held,* That O., being in peaceable possession under a tax deed, and having made permanent and valuable improvements, could not have been ousted by an action at law without compensation for taxes and improvements; and that equity following the law will, where possession is taken forcibly and in defiance of law, give to him the same rights which he would have had but for such forcible dispossession.

2. IRREGULAR TAX SALE; *Right of Purchaser; Subsequent Sale.* Where a lot owner fails to pay legal taxes, and the county treasurer goes through the form of selling the lot for such delinquent taxes, and sells the same to a third party, and receives from him full payment of such taxes, and a tax certificate is thereupon issued, such purchaser, although the sale proceedings are irregular and defective, acquires an equitable right to the tax lien, which the county cannot discharge at its own instance by a subsequent tax sale for the same taxes to a different party.

## *Error from Atchison District Court.*

ACTION brought by *Ostertag* against *Millbank,* and two others, concerning a certain lot in the city of Atchison. The opinion states the nature of the action and the facts. Trial by the court at the November Term, 1879, and judgment for the plaintiff. *Millbank* brings the case here.

*W. W. Guthrie,* and *Tomlinson & Griffin,* for plaintiff in error:

The tax-sale certificate and the tax deed to Ostertag were not voidable only, but absolutely void, and he thereby obtained no interest or lien, either in law or equity, on the lot in controversy.

1. The lot had been sold for the tax of 1869, and bid off for

the county, (Gen. Stat., ch. 107, § 96,) and thereafter, until redeemed or assigned, any further sale was prohibited, but such property was required to be advertised, as was done in this case in 1871, and thereafter all taxes and charges for 1870 were required to be charged up against such property, and thereby became added to and incorporated into the certificate of sale for the taxes of 1869. (17 Kas. 291.)

Such sale, being prohibited by law, was illegal: no right whatever can be obtained by virtue of a positively-illegal act. It is not a case of irregularity, nor even of a want of power, but was the doing of an act which the law says shall in no case be done, and therefore the result was not voidable, but void. (5 Kas. 505; 6 id. 73.)

"It is no better than if the probate judge, or the county attorney, or any other resident or non-resident of Lyon (Atchison) county had made the assignment." (6 Kas. 73.) Then how, or by virtue of what authority, did Ostertag ever have any tax claim on this lot, or right to take possession thereof? Only by acquiring such certificate, which was as "nothing at all."

2. But there were no tax charges upon such lot on January 12, 1874, except such as were incorporated in the certificate held by the county. The law required this tax to be advertised, and then, with charges, entered upon the book of tax sales against the sale for previous years, and thereby it constituted an additional lien; and this was done, as proved by the court, in finding No. 4. Then there was no tax for 1870 which was the subject of sale, separate assignment, or any other action, than to enter the same on the book of tax sales, and thereby incorporate it in the sale certificate for the 1869 tax, and this, when once done (as in this case,) the satisfaction of such sidewalk tax could only be obtained through such tax-sale certificate.

3. The act of 1872 (p. 391) authorizes a sale of such certificate, which was done December 27, 1875 (finding No. 10,) and thereby Ransom became both the full legal and equitable owner of all claims for taxes against said lot for the years

1869 and 1870, and Ostertag never was nor could be the owner of any claim or interest therein; and thereafter, whether Ransom sold or gave away his said claim to Challiss, Millbank, or anyone else, such act could not benefit Ostertag. It was his; he had the full legal right thereto, and his vendee, or donee, thereafter held by virtue of the same right which he had held. This is not the case of *Scarborough v. Smith*, 18 Kas. 399, nor of the cases there relied upon by defendant in error, but in principle that of the cases there relied upon by plaintiff in error, viz.: that of land which had been bought in for taxes by a stranger, and after the period of redemption had expired, and the title matured, and a purchase had been made from such stranger by a party interested in the land. Nor did any relation of confidence or trust exist between said parties which could interfere in the first instance, but, on the contrary, their claims were hostile to each other. Also, see Burroughs on Taxation, 352; 29 Pa. St. 139; 28 Wis. 312.

4. But there can be no question as to Challiss's purchase from Ransom not inuring to the benefit of Ostertag, as he had never had any interest in the land; nor was such tax-sale certificate of January 12, 1874, more than so much waste paper — the county not having anything to sell at said time. Ostertag neither could nor did buy anything at such sale.

5. Nor is the case of *Smith v. Smith*, 15 Kas. 290, in point in this case. That was an action of ejectment, in which defendant had paid the taxes and made the improvements in quiet possession, under what, at the time, was an undisputed tax deed. Here Ostertag admits in his petition that he never had a tax deed, and that he is not entitled to the benefit of the occupying-claimant's act, and the court finds that he took his deed and made such improvements on the lot after full knowledge that he had no deed, and that the lot was owned by Millbank.

6. This is not a case under § 601 of the code of "an occupying claimant being in quiet possession, who makes improvements without notice of an adverse claim;" nor within

30—24 KAS.

§ 117 of the tax law. Millbank was not asking to be let into possession, and by his purchase of Ransom's title he was in possession, holding under a tax claim, acquired subsequently to that of plaintiff, and by such purchase Millbank had "discharged that moral obligation resting upon him as well as upon others, to bear his proportionate share of the public burden," for Ransom had legally paid the same, and he had paid Ransom. How can it be said to be equity to require the holder of the legal title, who has in fact and in law paid all taxes on his property, to reimburse to another party what he may have paid without authority of law therefor, however innocent his mistake, or for the improvements which he has placed upon such lot after the discovery of his mistake, in the effort to fasten a burden upon such lot which the law never authorized? At most, the court could have done no more than to say that Ostertag had, by mistake of law, put a house upon Millbank's lot, and he should be allowed to go there and take it away. This much, not as a right, but to end the controversy, Millbank consented to at the trial, and will consent to now.

*Everest & Waggener*, for defendant in error :

1. It is claimed by the plaintiff in error that Ostertag had no rights whatever; that he was a trespasser, and that his possession was wrongful, because—first, the Ransom deed operated as a payment of the sidewalk tax; second, the sale to Ostertag was unauthorized by law.

On the first proposition we think that it is only necessary to call the attention of the court to the facts as disclosed by the record. At the time the lot was assessed for the taxes under which the Ransom deed was issued, L. C. Challiss was the owner of the property. He remained the owner until in 1871, when he sold to Millbank, executing a warranty deed, with full covenants against taxes. It then became his legal duty, so far as Millbank was concerned, to pay this tax. It was his duty to pay the tax from the time it was assessed down to the time that W. L. Challiss, as agent for L. C. Chal-

liss, obtained a quitclaim deed from Ransom, and thereafter quitclaimed to Millbank for the consideration of the covenants in the original deed of L. C. Challiss to Millbank. By obtaining the quitclaim deed from Ransom, Challiss did what had long been his legal and moral duty to do. He paid the taxes. ( 97 U. S. 181; 7 Kas. 110, 121; 8 id. 90; 42 Me. 224; 12 Ill. 422; 42 id. 41; 38 Cal. 216; 27 id. 300; 30 Mich. 118.)

To say the least, the quitclaim deed of Ransom to the agent of L. C. Challiss, operated as a redemption of the lot from the sale for the taxes that L. C. Challiss was under an obligation, both legal and moral, to pay, and thereby prevent a sale. ( 19 Wis. 424; 36 Cal. 135–146; 4 Mich. 140; Cooley on Taxation, pp. 345, 346, 347, and notes.)

From 1871 until after the quitclaim deed from W. L. Challiss to Millbank, the latter claimed to be the owner of the legal title to this property. The findings of fact show that he was the owner of the legal title. L. C. Challiss and W. L. Challiss, during all that time, were the agents of Millbank. When Millbank purchased this lot, it then became his legal duty to pay this tax, and the quitclaim deed from Ransom to Challiss, and from Challiss to Millbank, had the same effect only that the redemption of the land by Millbank would have had. True, Millbank, in the covenants of the warranty deed of L. C. Challiss to him, might have had a remedy over against Challiss for the money so paid by him, but this fact did not absolve him from the legal duty to pay taxes properly assessed against his land. (33 Wis. 228; 27 Pa. St. 166.)

But on the second proposition above stated, it is claimed that the sale being unauthorized by law, and the certificate being void, that Ostertag acquired no interest whatever — no right to the taxes he had paid or improvements he had made in good faith thereunder. We submit that this question has been settled in this state, in the case of *Stebbins v. Guthrie,* 4 Kas. 336, 337. See also, *Smith v. Smith,* 15 Kas. 290.

2. Ostertag being in possession under a tax deed (valid or void is immaterial), and being defeated in an action brought by or against him for the recovery of this land, the successful claimant should be adjudged to pay to the holder of the tax deed, before he should be let into possession, the full amount of all taxes paid on such lands, with all interest, etc., (§ 142, Comp. Laws 1879, p. 697,) and under §§ 601 and 602 of the code, the successful claimant should be adjudged to pay the full value of all lasting and valuable improvements made on the lot by Ostertag. (15 Kas. 294.)

3. It is a well-settled rule of this court that parties owning property should bear their portion of the burdens of taxation. (15 Kas. 49, 55; 14 id. 474; 9 id. 155; 11 id. 384, 398.)

4. There is no equity in the cross-petition of Millbank. He comes into court, and without paying or offering to pay an honest debt to the state, asks that the proceedings which the court has taken to collect that debt be adjudged void. (*Knox v. Dunn*, 22 Kas. 683.)

This court has held, in case of *Challiss v. Parker*, 11 Kas. 386, affirming the decision of the court below with reference to this identical tax, that "the sidewalk tax was legally placed on the tax-roll, and the sale of said lot therefor by the defendant, as county treasurer, is fully authorized by law."

We submit that on the authority of *Knox v. Dunn*, supra, Millbank has no standing in court, and ought not to be heard in his exceptions to any of the rulings of the court below.

The opinion of the court was delivered by

BREWER, J.: The record does not contain any of the evidence, but only the pleadings, findings of fact and conclusions of law made by the court. As shown by the record, the facts of the case are briefly as follows, viz.: In 1870 the lot in question was subject to taxation, and in that year, among other taxes, there was assessed thereon a sidewalk tax of $42.14. At this time one L. C. Challiss was the owner in fee simple of said lot, and had been for several years pre-

JULY TERM, 1880. 469

Opinion of the Court.

vious to that date. In 1869, L. C. Challiss having failed to pay the taxes due on this lot, it was sold in May, 1870, for $3.83, and bid in by the county treasurer; and in 1871 it was advertised for sale for the delinquent sidewalk tax above referred to. Thereafter, L. C. Challiss, desiring to evade the payment of this tax, commenced an action in his own name against the then county treasurer of Atchison county to enjoin the sale of said lot for such delinquent sidewalk tax for 1870, and obtained a temporary injunction against the county treasurer, enjoining a sale of said property, which injunction was, upon final hearing, duly dissolved by the judgment and decree of the district court of Atchison county, which judgment was thereafter affirmed by the supreme court of this state. (*Challiss v. Parker, Treas.*, 11 Kas. 384.)

Thereafter, on January 12, 1874, the lot was sold to Anton Ostertag for $55.10, the amount of said sidewalk tax, and a tax-sale certificate issued to him. On the 29th day of March, 1879, Ostertag took out a tax deed on the lot, and the same was duly recorded. On May 31, 1871, and after L. C. Challiss had commenced his suit to enjoin the collection of the delinquent sidewalk tax, he sold the lot in question to Samuel W. Millbank, and executed to him a warranty deed, containing full covenants of seizin, and full covenants against all liens, taxes and encumbrances, which deed was duly recorded. Said lot remained unredeemed, and the sale of May 20, 1870, for delinquent taxes for 1869, amounting to $3.83, unassigned, and on December 27, 1875, the lot was sold under the provisions of "An act to provide for the sale of lands for taxes due and unpaid thereon," approved February 27, 1872, to one Frank Ransom for fifteen (15) cents, and a certificate was issued to him, on which he procured a tax deed on February 14, 1876, which deed was duly recorded. Nothing was said in the certificate or deed about the taxes of 1870, or any other than the taxes of 1869. On the 19th day of December, 1877, William L. Challiss, acting as agent for L. C. Challiss, procured a deed from Frank Ransom, whereby Ransom quitclaimed all of his right, title and interest in the

lot to Wm. L. Challiss, who, for the consideration of the cov-
enants in the warranty deed of L. C. Challiss to Samuel W.
Millbank, on February 11, 1879, conveyed the lot by quit-
claim deed to Millbank. Previous to April 1, 1879, L. C.
Challiss was the agent of Millbank. On or about July 1,
1879, Ostertag took possession of the lot under his tax deed,
and erected thereon a house in a good and substantial man-
ner, costing $300. On the 6th day of August, 1879, L. C.
Challiss (without the knowledge or consent of Ostertag, and
after the house had been locked up by a contractor and em-
ployé of Ostertag,) did forcibly open the house in the night-
time, and then and there, without paying or offering to pay
to Ostertag the amount of the sidewalk tax paid out by Os-
tertag, and without paying or offering to pay for the im-
provements, procured one Garlick to move into the house
('in the night-time), and thereafter forcibly retained the pos-
session of the property from Ostertag. On the 4th day of
September, 1879, Ostertag commenced his action in the court
below, against Millbank, Challiss and Garlick, setting forth
the facts constituting his cause of action, and praying for a tem-
porary injunction against defendants from further occupying
the premises, and from in any manner interfering with him
in the quiet and peaceable use and occupation of the property,
and from interfering with the plaintiff's entrance upon said
premises and into the building thereon situate, and his re-
moving from the building all things that obstructed him in
the free use and occupation of the same; and also praying
judgment for all further proper relief. In the absence of
the district judge from the county, the probate judge granted
the injunction. Thereafter, on September 11, 1879, defendant
Millbank appeared and filed an answer and cross-petition,
asking that the plaintiff's alleged title and claim might be
adjudged void and held for naught, and that he be enjoined
from thereafter setting up or claiming any title, claim or in-
terest in and to the property. Challiss and Garlick filed
answers. The plaintiff filed a reply to the cross-petition of
Millbank, reiterating substantially the allegations of the pe-

tition, and praying. that if Millbank should be adjudged the legal owner, that before he should be decreed the possession of the land that he be required to pay the amount of taxes paid by Ostertag, and the value of all lasting and valuable improvements.

Upon these pleadings and findings of fact, the court below held: That Ostertag was not entitled to the injunction and relief prayed for in his petition; that the sidewalk tax is a valid and legal tax, and that said lot stood charged with the payment of the same; that the said tax sale to Ostertag, and deed issued in pursuance thereof, were without authority of law; that Millbank was entitled to the relief prayed for in his cross-petition, upon the condition that he should pay to the plaintiff $55.10, the amount of the sidewalk tax, with 7 per cent. interest from January 12, 1874, together with the further sum of $200, the amount that said lot had been enhanced in value by the improvements erected thereon by Ostertag, which amounts were legal and valid liens on the lot. The costs were divided between the parties. The defendant Millbank excepted to the conclusions of law, and and now brings the case here for review.

We think this case is practically covered by prior decisions of this court. It appears that Ostertag had a tax deed, that the lot was vacant, and that he took possession and erected a building upon it. Now, if at this time defendant had commenced his action to recover the possession, Ostertag would, under the decision in *Smith v. Smith*, 15 Kas. 290, have been entitled to his taxes and the value of his improvements before he was put out of possession. The notice required by § 601 of the code concerning occupying claimants is a notice by suit. Knowledge of an adverse title is not alone sufficient. Now if Millbank could obtain possession by legal proceedings only upon those conditions, may he, after taking the law into his own hands and in the night-time seizing forcible possession, come into a court of equity and enfore his possession without complying with those conditions? If such were the rule, it would mean that equity invites a party to take

the law into his own hands and commit a breach of the peace, with a promise of securing rights which he could not obtain by an action at law. We do not so understand the rule. Equity, it is said, follows the law; and where the law defines the rights of a party in possession, equity will enforce rather than destroy those rights, and certainly it will not destroy those rights at the instance of one who has forcibly seized possession and ousted the possessor. There was no fraud or collusion on the part of Ostertag in taking possession. The lot was vacant, and had been vacant for years. He held a tax-sale certificate, and afterward a tax deed. He had paid his money into the county treasury for these evidences of purchase and title. He might rightfully — if he could peaceably and without any fraud or collusion — enter upon the lot and improve it. He of course knew that some one held the original title. He may have known of the existence of the other tax deed, and it would have made no difference if there had been a dozen more tax deeds and he had known of the existence of them all. If no other claimant of the lot saw fit to take possession and improve, he could, leaving to any other party who had or thought he had a better title, to assert his rights in the courts. To say that he must determine at his peril the validity of his own tax title, and that if he mistakes and his tax title fails he must lose his improvements, is to render the occupying-claimant law of little force in tax cases. Whenever taxes are, in fact, not paid, and the proper authorities, because of such non-payment, make an actual sale in apparent conformity to law, and a party in good faith pays his money into the county treasury and receives a certificate of sale and a deed, he acquires such an equitable interest as will justify his taking possession of the lot, if vacant, and improving it. The law will respect his possession, and if it finally declares his title insufficient, will compel compensation for his improvements.

But we are met with this objection: The sale to Ostertag was a nullity because unauthorized by law. The taxes of 1870, including the sidewalk tax, were charged up upon the sale

for 1869. Ransom, by his purchase, acquired both of the tax liens of 1869 and 1870. Millbank's subsequent purchase was a practical redemption; and having discharged his whole duty to the public by a purchase from the legal holders of all the tax claims, why should he be compelled to pay any money to·one who has ignorantly paid money into the county treasury, or pay him for improvements which he had never been asked to put upon the property? Suppose, for instance, the lot owner paid his taxes at the proper time, and the officers, failing to enter the fact on the tax books, afterward sold the land as for non-payment of taxes, could the purchaser, upon the faith of such certificate of purchase, take possession and compel the lot owner to pay him the taxes and value of his improvements before surrendering possession? or, if after sale for non-payment of taxes, the lot-owner goes to the treasurer and redeems: could the holder of the sale certificate thereafter improve the lot at the expense of the lot owner? Could he, if ignorant of the fact of redemption? and if he could if ignorant, could he with full knowledge of the fact? Is not the duty to the lot-owner paramount to the duty to the tax purchaser, and should not the latter rather than the former suffer for the consequences of mistake or error on the part of public officers? We are not disposed to quarrel with this as a statement of the general rule of law, but two things seem to take this case out of that rule. Before the sale to Ransom, the treasury had received the money for this sidewalk tax, and the public officers had issued a certificate to the party paying, reciting that ·he had purchased this lot. In other words, the public authorities had sold the lot for this delinquent sidewalk tax and received full pay. Now whoever else might challenge such sale, the public could not. It had received the money and issued its certificate, or bill of sale. It must abide by its action until such action was, at the instance of some party interested, set aside. It cannot sell and resell and sell again, and keep on selling as long as it finds anyone willing to buy. If a lot is irregularly sold

to the county and the sale invalid, another sale may be made to it, (*Morrill v. Douglass*, 17 Kas. 291,) for in such a case no money is paid, and only a legal sale prevents a second sale; but a purchaser at even an irregular sale acquires rights which cannot be disregarded. He has paid his money, and may be satisfied with his title. The county has received the taxes, and cannot, of its own option and without returning the money, repudiate the sale. Now at a sale, irregular it is true, but nevertheless a sale, Ostertag had paid his money and received a certificate of sale on account of this delinquent sidewalk tax. This money had never been repaid to him. He was satisfied with the purchase, the public with the sale. Again thereafter the public sold the lot to Ransom. What for? As the papers show, simply for the taxes of 1869. No reference is made to the taxes of 1870, or to any subsequent taxes, and the only tax mentioned is that of 1869. Did he acquire any other tax lien than that of 1869? Evidently the county did not intend to sell any other, and he did not claim to be buying any other. It is said, however, that he bought more than the papers show, and that the county sold more than it intended to sell, and what it had already received full pay for on an attempted sale to another party, and this because the statute provides for a sale for all taxes due up to the time of sale. Now whatever of tax liens still belonging to the county such a sale will carry, in the absence of any recital (and for the purposes of this case it may be conceded that it would carry all, though that may well be doubted), it seems clear that it ought not to be held to carry a tax lien of which the county was not equitably the owner, and full payment for which it had already received.

Again, it will be perceived that the purchase by Challiss of the Ransom title and subsequent conveyance to Millbank, was practically nothing but a redemption from the taxes of 1869. It was bought by W. L. Challiss, as agent for his brother, and conveyed to Millbank in satisfaction of the covenants in the deed to the latter. Hence, it is to be treated as

a redemption from a tax sale, rather than as a purchase of a tax title. In such light, the case stands before us as a controversy between the holder of an irregular and defective tax deed, and the owner of the original title. The statutory protection must be accorded to the former.

This case has given us much trouble in determining the relative rights of the parties, and with much hesitation we have reached the conclusions above stated. We are not satisfied that the district court erred, and therefore its judgment must be affirmed.

VALENTINE, J., concurring.

HORTON, C. J.: I concur solely on the ground that the sale to Ransom on December 27, 1875, was defective and invalid, by the failure of the county officials to fully comply with the various provisions of the statutes. Owing to such non-compliance, Ransom only obtained a transfer of the taxes of 1869, while Ostertag held the subsequent tax claim of 1870. The defective proceedings in the tax sale of December, 1875, prevented that sale from wiping out the taxes of 1870; and notwithstanding such sale, owing to its defects, Ostertag was the holder of a tax certificate, and afterward a tax deed for taxes subsequent to the tax lien of Ransom, which the plaintiff purchased. Hence, in accordance with the prior rulings of this court, laid down and established long before the writer of this became a member of the court, the sidewalk tax of 1870, having never been included in the tax sale of December 27, 1875, and being unpaid, and a sale having been made therefor and a tax deed having issued on such sale, Ostertag is entitled to his taxes and the value of his improvements, although the tax sale to him was invalid, and his tax deed void. (Comp. Laws 1879, ch. 107, § 142; *Stebbins v. Guthrie*, 4 Kas. 366; *Smith v. Smith*, 15 Kas. 290; *Babbitt v. Johnson*, 15 Kas. 252.)