No. 23,198.

THE STATE OF KANSAS, *Appellee*, v. S. M. HUTZEL, *Appellant*.

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Destruction of Deed with Intent to Defraud—Sufficient Information.* An information which lacks no material matter of precision and certainty to fully apprise a defendant of the crime charged against him and which is sufficiently clear to cause the court no doubt touching the correct judgment to be pronounced thereon upon a verdict of guilty is sufficient against a motion to quash or a motion in arrest of judgment.

2. SAME—*Evidence—Issue Properly for Jury.* The evidence examined, and *held* that notwithstanding that part of it which tended to exculpate the defendant the issue was properly one for the consideration of the jury.

3. SAME—*Inadequate Instructions to Jury.* Where the attorney and confidential adviser of the grantor of a deed receives such deed from his client to be delivered to the grantee after the death of the grantor, and the attorney, during the grantor's lifetime destroys the deed, the matter of the attorney's good faith, when he candidly admits that he destroyed it, is of controlling significance when such attorney is prosecuted on a charge of destroying it with intent to defraud the grantee, and the question whether the grantor retained control over the deed during his lifetime and whether he expressly or impliedly authorized the destruction of the deed should also be adequately covered by the court's instructions to the jury.

4. SAME—*Instructions.* The instructions requested were properly refused, but those given were inadequate and prejudicially erroneous.

Appeal from Trego district court; ISAAC T. PURCELL, judge. Opinion filed February 12, 1921. Reversed.

*David Ritchie,* of Salina, and *J. P. Shutts,* of Hays City, for the appellant.

*Richard J. Hopkins,* attorney-general, and *John R. Parsons,* county attorney, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The defendant, an aged attorney of Wa Keeney, was convicted under section 191 of the crimes act (Gen. Stat. 1915, § 3518) of the offense of destroying a deed to a half section of land which the grantor had delivered to him and

which was to be surrendered by the defendant to the grantee after the death of the grantor. It was alleged that such destruction was feloniously perpetrated with intent to defraud the grantee.

The errors assigned in this appeal are mainly these: the insufficiency of the information to charge an offense, the insufficiency of the evidence to sustain the charge, and errors in the instructions given and refused.

Touching these in order, the information lacked no material matter of precision or certainty to fully apprise the defendant of the crime charged against him, nor would it cause the court to doubt or hesitate as to the correct judgment to be pronounced thereon upon a verdict of guilty. It was therefore sufficient. (*The State v. McCord,* 8 Kan. 232; *The State v. Harp,* 31 Kan. 496, 500, 3 Pac. 432.)

A more debatable question is involved in the sufficiency of the evidence. With due consideration to that part of it which tended, plausibly at least, to exculpate the defendant, we are constrained to hold that, under proper instructions, the case was one for the consideration of the jury.

Certain rather imperative and scarcely correct instructions were asked by defendant and refused by the court. The chief question in this lawsuit—most of the other facts including the destruction of the deed having been candidly admitted by defendant—was whether the grantor of the deed intended to make an unqualified deposit of the deed and to renounce all future control over it, without power in himself to revoke it or to direct any other disposition of it than the one named when he gave it to defendant—to deliver it to the grantee after his death. The deed in question was made by Dr. C. S. Wall to Mrs. Wall, his wife. She had married Wall in his declining years and had furnished him with her own funds to relieve his most pressing indebtedness. After Dr. Wall had deposited the deed with defendant, he frequently solicited the latter to raise some money for him. Dr. Wall was in sore financial straits, and in ill health far from home. The state produced in evidence a mass of letters written by defendant to Dr. Wall, in which among other matters a proposed loan by defendant was discussed, and for which Wall proposed to give another deed to the property. One of these letters reads:

"S. M. HUTZEL,

"Lawyer and Real-estate Dealer, Wa Keeney, Kansas.

"*Dr. C. S. Wall, Jacksonville, Florida:*     "FEBRUARY 13, 1920.

"DEAR DOCTOR—Your letter of 10th instant in relation to farm received and I hasten to answer same. First, I had counted on letting you have for your own personal use $300 or $400, but not all at the same time as my money will be coming in slowly in payments, but I have made arrangements to let you have $100 at once on receipt of deed if those people have not 'balled' things up, so we had better get busy. Execute the deed and I'll examine the records, and file same if they haven't filed their agreement; I hardly think they will for they will be waiting for you to sign.

"When you send me the deed write me separate from your letter telling me what to do fully in such respects as you wish between us personally, then on a separate piece of paper instruct me to burn or destroy the deed made by you to Mrs. Wall now in my possession, and I'll carry out your instructions to the letter.

"I don't see where you would get any money on the deal with two mortgages, and he [a prospective buyer from Mrs. Wall] assume the existing mortgage, and I presume that Mrs. Wall would want the mortgages made to her and she would hold them, and you would hold the 'sack.' Such things sometimes occur, but I hardly think that they can bind you in that manner.

"When you write sending the deed, say about when you will have to have another hundred dollars, and I'll get it for you, but I have counted on making you payments along as you would need it. If I can't get the money any other way, I have a quarter that I have a standing offer of $4,000 for it, but not all cash, but I can get enough to meet your demand easily, but the $100 I can send you within 24 hours of the time I received the deed, so if you are in a hurry for a little money, get a move on you. And as I said about the deed to Mrs. Wall, it will amount to nothing as I am not 'chump' enough to let that go after I have the deed returned to me, and further, it amounts to nothing now in any way or manner, so do not worry about it. I'll protect you. I am,

Most truly yours,     S. M. HUTZEL."

In response thereto, Dr. Wall executed a deed to the defendant for the consideration of a thousand dollars, but this deed was only intended to serve as a mortgage for such sums of money as the defendant from time to time should advance to Dr. Wall or on Wall's account. In certain civil litigation between Mrs. Wall and defendant, contemporaneous with this criminal case, the Wall deed to defendant was conceded to be and was settled for on that basis. When Dr. Wall sent the deed from himself to the defendant, the latter destroyed the deed to Mrs. Wall which had been deposited with him. So far

The State v. Hutzel.

as the voluminous correspondence in the record discloses, it does not appear that Wall gave defendant literal directions to destroy the deed to Mrs. Wall; but authority to do so could be inferred from the circumstances. It was in response to Hutzel's letter requesting such authority that he executed the deed to Hutzel. Hutzel had offered to supply Wall with money if he would give him a deed and *if he were given authority* to destroy the earlier deed. Wall was too ill to write much—except piteous requests for money, such as these:

"FORT LAUDERDALE, FLORIDA, Feb. 14, 1920.
"HON. S. M. HUTZEL— . . . Please be quick or I will suffer for money—if you can get it at once, send me some money to relieve me. . . .                                                    . "DR. C. S. WALL."

"FORT LAUDERDALE, FLORIDA, (Feb.) 18/20.
"HON. S. M. HUTZEL— . . . They are crazy to close their and even say they will give me more. Now I have a proposition. Let us all go in together & make them pay a $1,000 more. I will give you a $100 to attend to the business—I will want you to control the entire thing & will see that you do & you shall have $100 spot. She will come to time now. I will write her to-night. . . .    "DR. C. S. WALL."

"I enclose you the deed as you desired—please get me money $400 & I want two hundred for her. I am not willing to pay interest on much for her, but she must have some—Please get this to me at once if possible for I will be in a tight place if you don't—I will write immediately on arriving at Fort Lauderdale—

"I told Mrs. Wall I would not sign her papers. Hurry with all possible speed—                                            "DR. C. S. WALL."

We should not extend this opinion by reproducing more of this evidence, but it was largely to the same general effect. Hutzel was Dr. Wall's attorney and confidential adviser—and apparently his financier as well. The proper significance of this relationship, and of all the evidence, including the fair and reasonable interpretation of this mass of correspondence should have been suitably covered by the court's instructions. Those requested by the defendant were properly refused; but those given were clearly inadequate. On this vital point, the trial court's instruction reads:

"6. . . . And if you should further find and believe beyond a reasonable doubt that before the death of the said Dr. C. S. Wall, the defendant Hutzel had destroyed said deed; and if you further find and believe from the evidence in this case, that at the time the said C. S. Wall turned said deed over to the said Hutzel, he, the said Dr. C. S.

Wall, intended to retain control of said deed during his life time. The defendant had right under the circumstances to return the deed to Dr. C. S. Wall but had no right to destroy same."

What Dr. Wall had reserved power in himself to do, if anything, he certainly might authorize the defendant to do. If he reserved control over the deed during his lifetime, the destruction of the deed to Mrs. Wall, in Wall's life, was no fraud upon Mrs. Wall if it was destroyed by authority of Dr. Wall express or implied. Furthermore, if Hutzel in good faith believed that in making him the depositary of the deed during the lifetime of Wall, the latter intended to retain control of it—whether Wall in fact did so intend or not—then Hutzel could not be convicted of the crime charged if he destroyed the deed by authority of Wall either express or implied. And as the presumption of the good faith of Hutzel, and the presumption of his innocence of wrongful intention in what he candidly admitted that he did do, could only be overcome by conclusive evidence to the contrary, the want of comprehensive instructions covering these matters was prejudicial error.

The judgment of the district court is reversed and the cause is remanded for a new trial.

PORTER, J., not sitting.