State v. Bowser.

No. 27,516.

The State of Kansas, *Appellee,* v. S. Newton Bowser, *Appellant.*

(261 Pac. 846.)

### SYLLABUS BY THE COURT.

1. Homicide—*Culpable Negligence in Operating Motor Vehicle—Information.* In a prosecution for manslaughter in the fourth degree based upon the alleged killing of a human being by the culpable negligence of defendant in driving his automobile across the intersection of a city street at a speed greater than was reasonable and proper, and dangerous to life and limb, the information sufficiently charged one public offense and not several offenses, and defendant's motion to quash was properly overruled.

2. Same—*Generally.* Minor objections to the instructions considered in the opinion and held insufficient to disturb the judgment.

3. Same—*Culpable Negligence in Operating Motor Vehicle—Consideration to be Given Decedent's Negligence.* In a prosecution for manslaughter in the fourth degree caused by the alleged culpable negligence of defendant, while contributory negligence on the part of the decedent was not a defense, the court should have instructed the jury that the decedent's negligence, if shown, should be considered with all the other evidence to determine whether the negligence of defendant was the proximate cause of the killing or whether defendant's act or omission was culpably negligent under the circumstances.

4. Same—*Culpable Negligence in Operating Motor Vehicle—Wrongful Act Must Arise Under General Law.* The culpable negligence with which the statute is concerned in defining manslaughter in the fourth degree in R. S. 21-420 relates to some wrongful act or omission by the defendant under statute or general rule of law, and not to some mere breach of a city ordinance.

5. Same—*Culpable Negligence in Operating Motor Vehicle—City Ordinance.* The record examined, and *held,* that the extent to which the ordinance of the city of Parsons permeated the theory on which the defendant was prosecuted and convicted, as shown by the information, the county attorney's opening statement, the state's evidence, and the court's instructions, constituted prejudicial error necessitating a reversal of the judgment and a new trial.

Appeal from Labette district court; William D. Atkinson, judge. Opinion filed December 10, 1927. Reversed.

Automobiles, 30 L. R. A. n. s. 458; 33 L. R. A. n. s. 403; L. R. A. 1918B 954; 30 A. L. R. 66; 42 A. L. R. 725; 2 R. C. L. 1212. Homicide, 29 C. J. pp. 1149 n. 49, 1153 n. 84; 30 C. J. p. 437 n. 35. Indictments and Informations, 31 C. J. pp. 660 n. 93, 662 n. 2, 771 n. 16. Motor Vehicles, 42 C. J. pp. 1355 n. 45, 1359 n. 7 new, 1364 n. 93, 1365 n. 15 n. 26.

State v. Bowser.

*Elisha Scott,* of Topeka, for the appellant.

*William A. Smith,* attorney-general, *Payne H. Ratner* and *Charles H. Cory,* both of Parsons, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This case involved a prosecution of defendant, S. Newton Bowser, for causing the death of Claude R. Anderson on August 22, 1926.

Anderson had been riding westward on an interurban street car on Main street in the city of Parsons, and had just alighted therefrom at a street intersection (Twenty-eighth and Main) and was proceeding northwesterly across the intersection when Bowser came from the east driving a Cadillac car which struck and tossed Anderson toward the north curbing. Anderson died in two hours, and Bowser was prosecuted under R. S. 21-420. The state's evidence tended to prove that Bowser was guilty of culpable negligence in driving his car at a high and unreasonable rate of speed—twenty-five to forty miles per hour, according to the state's witnesses.

Bowser was convicted of manslaughter in the fourth degree and sentenced to one year's penal servitude. He appeals.

The pertinent statute reads:

"Every other killing of a human being, by the act, procurement or culpable negligence of another, which would be manslaughter at the common law, and which is not excusable or justifiable, or is not declared in this article to be manslaughter in some other degree, shall be deemed manslaughter in the fourth degree." (R. S. 21-420.)

The first error presented relates to the overruling of defendant's motion to quash the information on two rather inconsistent grounds —first, that it charged three distinct crimes, and second, that it did not allege any crime. The information followed closely the language and allegations in the information set out in *State v. Bailey,* 107 Kan. 637, 193 Pac. 354. Perhaps it paraphrased that information too closely, because the statute governing the speed of automobiles in cities has been changed somewhat since the Bailey case. At the time Bailey ran down and killed Geraldine Ransom the law (Laws 1917, ch. 74, § 5) forbade the operation of any motor vehicle—

" . . . Within any city or village . . . at a speed greater than twelve miles an hour, nor at a rate of speed greater than is reasonable and proper, and having regard for the traffic and use of the road, and the condition of the road, nor at a rate of speed such as to endanger the life or limb of any person."

In the present statute (Laws 1925, ch. 84, § 1) the specific in-

hibition of any speed "greater than twelve miles an hour" does not appear. It now reads:

"Within any city or village no motor vehicle shall be operated at a rate of speed greater than is reasonable and proper, and having regard for the traffic and use of the road and the condition of the road, nor at a rate of speed such as to endanger the life or limb of any person."

Counsel for the state contend that the inclusion of the allegation that Bowser was driving at a greater speed than twelve miles an hour was merely nonprejudicial surplusage. However that may be, the objection that the information did not charge a criminal offense is not good. In *State v. McCarthy*, 124 Kan. 20, 257 Pac. 925, it was said:

"The rule as to the sufficiency of an information is that if it fairly apprises the defendant of the crime charged against him and is definite enough so that the court will have no trouble in ascertaining the correct sentence to impose upon a verdict or plea of guilty (*State v. Hutzel*, 108 Kan. 456, 195 Pac. 887), the information is good against a motion to quash." (p. 21.)

Neither is there merit in the contention that the information charged three distinct offenses. The fact that the necessary allegations included in the information to perfect the charge of manslaughter in the fourth degree recited facts and incidents which, standing separately, would have sufficiently charged penal infractions of the speed law is immaterial. (*State v. Meade*, 56 Kan. 690, 44 Pac. 619; *State v. Bryan*, 120 Kan. 763, 245 Pac. 102; *State v. Robinson*, 124 Kan. 245, 248, 259 Pac. 691.)

The next error urged relates to the trial court's instructions to the jury. Under this assignment appellant quotes liberally from the instructions and makes numerous criticisms thereon. For example, the trial court gave this instruction:

"You are instructed to disregard the statements of counsel made during the progress of this trial, as to what they expected to prove or disprove, unless such statements have been substantiated by evidence admitted by the court, . . ."

The point is made that from this instruction the jury might infer that if the statements of counsel were substantiated by evidence, such statements of counsel were not to be disregarded, but given a measure of credence. The literal text of this instruction might well be revised. It would be more precise to tell the jury that statements of counsel are not in any sense to be considered as evidence; and that counsel are merely permitted to make such statements so that the court and jury may be advised as to counsel's theory of the case

and what they will attempt to prove by evidence. However, we think the possibility that the jury were misled by this instruction is too remote to justify an inference that defendant was prejudiced thereby.

Fault is also found with the trial court's instructions concerning culpable negligence, but they were not subject to serious criticism unless the inclusion of a reference to the speed ordinance of the city of Parsons as an element of such negligence may have prejudiced the defendant. That point still requires special consideration.

Defendant also contends that he was entitled to an instruction touching the effect of the contributory negligence of Anderson. The court correctly instructed that the negligence of Anderson, if any, was no defense to the alleged crime of Bowser, but the instruction was somewhat lame in failing to state that the decedent's negligence, if shown, should be considered with all the other evidence to determine whether some negligent act or omission of defendant's was or was not the proximate cause of Anderson's death, or whether under the circumstances defendant's act was negligent at all. In the analogous case of *State v. Campbell,* 82 Conn. 671, 136 A. S. R. 293, 296, it was said:

"The court properly said to the jury that the state must clearly show that the deceased's death was the direct result of the defendant's negligence, but that the injured man's conduct became material only as it bore upon the question of such negligence of the accused." (p. 675.)

In *Dunville v. State,* 188 Ind. 373, the defendant was convicted under the motor vehicle act for inflicting mortal injuries on a small child who darted out into the street on which defendant was driving at an excessive rate of speed. In reversing the judgment, the court said:

"Counsel for the state . . . wholly deny that the conduct of this child in suddenly coming into the street has anything to do with this case. Their contention is, if we understand them, that if it was shown that appellant was violating the speed law, and that, as some of the evidence shows, he was looking back, or looking to the side at some men who attracted his attention on the east side of the street, and for that reason did not see the child, that he is therefore guilty of manslaughter. Counsel for the state say that contributory negligence of the child has nothing to do with the case. This is true in a sense. It is not a question of contributory negligence. Of course, we know that a child two years and nine months old is not *sui juris* and cannot be guilty of negligence, or contributory negligence, in the ordinary sense of those terms; but the conduct of this child, in the circumstances shown by the evidence, is just as cogent in breaking down the intent which the law imputes

to appellant after the event, as like conduct on the part of an adult in like circumstances would be in repelling such imputation. It is not a question of contributory negligence, but it is one of proximate cause.

"So the question is, Did appellant conduct himself at the time and place in such manner as to show a willful and wanton disregard for the rights of others, from which the law infers an intent to cause death, and did his conduct cause the death? It will be conceded that, if appellant were driving his motorcycle down the street, and the facts showed that he saw, or had reason to know that little children were upon the street who were of such tender age as not to know the dangers or heed warning signals, it would be his duty so to conduct himself as not to injure them, and in the event that he willfully and wantonly disregarded that duty and his conduct resulted in the death of one of them, he would be guilty of involuntary manslaughter. Circumstances could well be conceived in which he would be guilty of involuntary manslaughter if he drove the motor vehicle even at one mile an hour in a street crowded with little children—or even crowded with adults.

"The most the evidence discloses is negligence on the part of appellant. For aught that appears in this case, the proximate cause of Frances Held's death was the fact that she ran in front of appellant's motorcycle and suddenly stopped. For aught that is shown by the evidence the accident would have occurred had appellant been proceeding in the most careful manner. . . . The judgment is reversed, with instructions to sustain appellant's motion for a new trial." (p. 378.)

Another error urged relates to the trial court's failure to instruct the jury concerning the consideration to be given to the evidence of good reputation adduced in defendant's behalf. However, in arguing their motion for a new trial his counsel admitted that they had failed to ask for such an instruction, and under the circumstances of this case—neither malice nor similar vice constituting an element of the offense—its omission was not error. (*State v. Nichols,* 117 Kan. 630, 232 Pac. 1058.)

Appellant also complains of impertinent matter in the instructions. The case was a very simple one, easy to charge and easy to prove, and the pertinent instructions touching the law of the case might well have been given in small compass. Those given fill twelve closely printed pages of the abstract, and it must be said they do contain irrelevant matter. Thus the instructions contain that paragraph of the crimes act, R. S. 21-419, which defines the offense of the involuntary killing of a human being by a weapon, and treats of the legal consequences to follow if they find Bowser—

"With which means, to wit, an automobile, defendant inflicted or created on the body of said Claude R. Anderson certain mortal injuries or wounds; that from the wounds or mortal injuries so inflicted the said Claude R. Ander-

son then and there died in the county of Labette and state of Kansas, all as charged in the information," etc.

It seems superfluous to say that Bowser was not charged under this section of the statute; the automobile was not a "weapon" with which Bowser involuntarily killed Anderson in the heat of passion.

The instructions also included full quotation of R. S. 21-404 and 21-405, which cover justifiable and excusable homicide in all their manifold aspects, not one of which had the slightest relevancy to the case at bar.  There was no suggestion of a defense to this prosecution based upon some theory of justification or excuse under either of these provisions of the statute.  Bowser's defense was simply this: He was not driving fast, but slowly and carefully; the street car did not stop, nor did anybody get off where it should have stopped, on the east side of Twenty-eighth street; that he had no reason to take precautions against the possibility that the street car would stop and Anderson get off the car after it had passed the center of the intersection and at some distance beyond the usual stopping place; that his consequent striking of Anderson with its fatal result was purely an accident so far as defendant was concerned; and that Anderson's getting off the car when and where he did and starting for the curb without looking to see if an automobile was coming— whether negligent or not—was the proximate cause of the tragedy. In view of this kind of a defense the inclusion of the statutory provisions concerning justifiable and excusable homicide were irrelevant if not altogether prejudicial.

Defendant also complains because the court included in his instructions the paragraph of the crimes act, R. S. 21-423, which prescribes the punishment for the crime charged in this prosecution. Of course that matter was not the jury's concern; it should not have been given (*State v. Bell*, 107 Kan. 707, 193 Pac. 373), but its inclusion was not prejudicial.

But we come to a matter of graver consequence than anything yet discussed.  The trial court permitted the state to introduce in evidence *in extenso* the city ordinance of Parsons governing the use of automobiles.  Among other matters that ordinance made it unlawful to drive an automobile on the streets of Parsons at a greater speed than twelve miles per hour, and unlawful to drive across an intersection at more than six miles per hour, and required that all vehicles stop and not proceed past a street car while passengers are being

loaded or discharged, and many other matters of no present concern in this prosecution. We have already noticed that the information also contained an allegation that defendant drove his automobile "at a rate of speed greater than twelve miles an hour." In his opening statement to the jury the county attorney said:

"That the city ordinances of Parsons make it unlawful and illegal for anybody to drive an automobile on the streets of Parsons at more than twelve miles an hour, and on an intersection of more than six miles per hour."

So, too, the city clerk was placed on the witness stand and testified in detail concerning the city speed ordinance. Moreover, in the trial court's instructions reference to the city speed ordinance is repeatedly made. One instruction reads:

"The state has introduced in evidence ordinance No. 2,483 of the city of Parsons, commonly known as the traffic ordinance of said city, passed and approved April 19, 1920, published April 22, 1920, and effective after its publication.

"Section No. 12 of said ordinance, fixing the speed of automobiles when being driven over the streets of the city of Parsons, reads as follows:

" 'Sec. 12. That no person shall operate a motor vehicle of any kind on any street, avenue or public highway within the city of Parsons, Kansas, at a rate of speed greater than 12 miles an hour nor at a rate of speed greater than is reasonable and proper, having due regard for the traffic and use of the streets, avenues, alleys, or public highways, considering the condition of the same, nor at a rate of speed such as to endanger the life or limb of any person.'

"Section 14 of said ordinance provides, among others, that an automobile on approaching an intersection of a street or avenue in the city of Parsons shall not be driven at a speed exceeding six miles per hour, except emergency calls of physicians or surgeons, police or fire vehicles, or ambulances, when answering emergency calls demanding excessive speed.

"Section No. 11 of said ordinance provides that all street or interurban cars operated within the city of Parsons shall when stopped be stopped before crossing the intersection street and before reaching the cross walk. Said section No. 11 also provides, that all vehicles, including automobiles, shall stop and not proceed past street cars while passengers are being loaded or discharged.

"You are instructed that it is the duty of all drivers of automobiles on the streets within the city of Parsons to observe the provisions of said ordinances; but before you would be warranted, if at all, in finding defendant guilty, as charged in the information, for a failure to observe the provisions of said ordinance, or any of them, such failure, if any, must have been the proximate cause of the killing of said Claude R. Anderson."

It is quite manifest, we think, that this case was tried from first to last on the theory that the infraction of the city speed ordinance by Bowser, if proved, was a material fact in establishing Bowser's

guilt. We think that matter was given far too much significance in this prosecution. The "twelve miles per hour" feature of the information might be disregarded as surplusage as the state contends, but its inclusion therein does give a keynote to the whole theory of the prosecution, as well as to the elaborate treatment of the city speed ordinance in the instructions. We may pass by the introduction of the speed ordinance and the testimony of its custodian, the city clerk, especially as counsel for the state make the point that that evidence was not objected to. But the significance given to the city speed ordinance in the instructions cannot be overlooked. The breach of a city ordinance subjects the offender to a fine and possible jail sentence in the police court of the city. It has nothing to do with the matter of determining whether or not a crime has been committed in violation of state law. In Parsons it is a breach of police regulations for a driver not to stop his automobile when he comes to a place where a street car is loading or unloading passengers. In a dozen other Kansas cities there is no such requirement. In Parsons it is a misdemeanor to drive an automobile over a street intersection at a greater speed than six miles an hour, or anywhere on the streets of Parsons at more than twelve miles per hour. An autoist in many Kansas towns would be in danger of arrest for delaying the traffic if he dawdled in a busy street in such a fashion.

The culpable negligence of an offender under R. S. 21-420 is not ascertained by consideration of the variable element involved in the local speed ordinances of the different cities of this state. The offense of manslaughter in the fourth degree is the same in every city, and cannot be permitted to vary because one city may have a six-miles-per-hour speed limit at street crossings and another eight miles, and still others ten, twelve, or other number of miles per hour.

So far as Bowser's culpable negligence depended upon the fact of the speed at which he drove his automobile, it was completely and exclusively covered by state law as already quoted in this opinion.

The culpable negligence with which the crimes act, R. S. 21-420, is concerned pertains to some breach of duty imposed by statute or general principle of law, not by city ordinance. This is clearly pointed out in the analogous case of *State v. Collingsworth*, 82 Ohio St. 154, 28 L. R. A., n. s., 770, where it was said:

."The unlawful act being committed, which results in the death, must be an act prohibited by law, as distinguished from an act forbidden by an ordinance of one of the municipalities of Ohio. . . . There are many municipal corporations in this state, and each may have its ordinances, appropriate to its·local'needs, and therefore there cannot be any uniformity in such local laws, if they should be entitled to the name of laws. Many of the counties of the state contain several municipal corporations. What may be an·unlawful or prohibited act in one may be lawful in another, and so throughout the state. We are not permitted to say that what may constitute an essential element of manslaughter in one city or village need not be present in the ordinances of other cities or villages of the state. If the act of killing a person, which ensues from violating a municipal ordinance, constitutes manslaughter, then we have a·law of a general nature, which perhaps is not of uniform operation throughout even Franklin county. Neither is it of uniform operation throughout the various municipalities of the state. The unlawful act contemplated as an essential element of manslaughter must be uniformly unlawful throughout the state. Otherwise, what might be that crime in Columbus might not be such in Dayton, Toledo, Cleveland, or any other city or village in the state." (p. 159.)

In *Commonwealth v. Adams*, 114 Mass. 323, the defendant was prosecuted under the state law for assault and battery because in driving a sleigh across a street intersection at a rate of speed prohibited by city ordinance he ran against a boy and knocked him down. Defendant had pleaded guilty to a complaint for fast driving, in violation of the city ordinance. The state also asked for a verdict on the ground that the intent to violate the city ordinance supplied the intent necessary to sustain the state's charges of assault and battery. The trial court so held, but the supreme judicial court ruled:

"One who negligently drives over another is not guilty of a criminal assault and battery, although he does it while violating a city ordinance against fast driving." (Syl.)

In the opinion it was said:

"It is true that one in the pursuit of an unlawful act may sometimes be punished for another act done without design and by mistake, if the act done was one for which he could have been punished if done willfully. But the act, to be unlawful in this sense must be an act bad in itself, and done with an evil intent; and the law has always made this distinction; that if the act the party was doing was merely *malum prohibitum*, he shall not be punishable for the act arising from misfortune or mistake; but if *malum in se*, it is otherwise. (1 Hale P. C. 39; Foster C. L. 259.) Acts *mala in se* include, in addition to felonies, all breaches of public order, injuries to persons or property, outrages upon public decency or good morals, and breaches of official duty, when done willfully or corruptly. Acts *mala prohibita* include any matter forbidden·

State v. Bowser.

or commanded by statute, but not otherwise wrong. (3 Greenl. Ev., § 1.)    It is within the last class that the city ordinance of Boston falls, prohibiting driving more than six miles an hour in the streets." (p. 323.)

In *People v. Pearne*, 118 Cal. 154, the defendant was convicted of the crime of involuntary manslaughter. It was claimed that while intoxicated he drove his team of horses on a public street at a great and unusual rate of speed, and in so doing ran over and fatally injured a feeble old woman. The prosecution introduced in evidence at the trial an ordinance of the county of Butte, which declared it a misdemeanor to drive at a greater rate of speed than six miles an hour in any unincorporated town or village of that county which contained five hundred inhabitants. This evidence was offered for the purpose of showing that the defendant was guilty of a misdemeanor in driving at a greater rate of speed than six miles an hour in the town of Biggs, and for this reason it was claimed by the prosecution that he was engaged in the commission of an "unlawful act" when the killing was done. In reversing the judgment on other grounds the court said:

"We suggest that upon a retrial of this case, if the officers of the law deem a retrial advisable, the whole question of ordinance be omitted from the evidence. We do not see how the case is strengthened by it. . . .

" . . . In arriving at the verdict, we cannot tell whether the alleged violation of this ordinance of the county of Butte was considered by the jury in their deliberations." (p. 158.)

And so here. We cannot tell to what extent the alleged violation of the speed ordinance of the city of Parsons entered into the deliberations and verdict of the jury. Presumably the city clerk's testimony, the reading of the ordinance as evidence in the case, and its inclusion in the instructions with the court's dissertation thereon, had all the significance the prosecuting attorney and trial court intended they should have. The result was prejudicial. The judgment will have to be reversed; and in another trial all consideration of any breach of the ordinance as a factor in establishing the culpable negligence of the defendant should be omitted.

Some other matters are raised in defendant's brief which present nothing to justify further discussion. We have noted certain affidavits filed in this court intimating, and counter affidavits denying, the occurrence of certain irregularities pertaining to the trial below, but as these affidavits were not presented to or ruled on by the trial court they cannot be considered in this appeal. (*Woodburn v.*

*Harvey,* 107 Kan. 422, 191 Pac. 468; *State v. Hobl,* 108 Kan. 261, syl. ¶ 11, 194 Pac. 921; *State v. Brecheisen,* 117 Kan. 542, 232 Pac. 244.)

Reversed and remanded for a new trial.