No. 34,316

The State of Kansas, *Appellee*, v. Willard H. Harris, *Appellant*.

(95 P. 2d 269)

Opinion filed November 10, 1939.

*A. E. Kramer,* of Hugoton, for the appellant.

*Jay S. Parker,* attorney general, *A. B. Mitchell,* assistant attorney general, and *Oscar F. Perkins,* county attorney, for the appellee.

The opinion of the court was delivered by

Harvey, J.: Appellant was charged under G. S. 1935, 21-584, with willfully setting fire to and burning insured property with the intent to injure and defraud the insurer. Upon a trial he was found guilty and sentenced. He has appealed and contends the trial court erred: (1) In overruling his motion to quash the information; (2) in overruling his motion to be discharged, or for an instructed verdict, on the ground that the evidence was insufficient to sustain a conviction; (3) in refusing to give a requested instruction; (4) in a ruling on admission of evidence, and (5) in overruling his motion for a new trial.

The information was in three counts. Defendant's wife also was charged in a separate information in one count. They were being tried together. The written motion to quash was for the reason "that said informations each fail to charge a public offense under the laws of the state of Kansas." The court sustained this motion as to the second count of the information against appellant and overruled it as to the first and third counts, and also overruled it as to the information filed against the wife of appellant. At the close of the state's evidence defendant moved that the state be required to elect as to whether it would ask for a conviction of appellant on the first or on the third count of the information against him. The court sustained the motion and the state elected to proceed with the trial on the first count only, and the third count was

dismissed. The court also sustained a motion to dismiss as to the wife of appellant. The case then proceeded to trial against appellant upon the first count of the information against him. Appellant now argues that the first count of the information does not charge the offense as "direct and certain as regards the party and the offense charged," as is required by G. S. 1935, 62-1004 and 62-1005. This question was not raised in the trial court, hence it is not available to appellant here. (*State v. Hancock*, 127 Kan. 510, 274 Pac. 209; *State v. Cross*, 144 Kan. 368, 59 P. 2d 35.) Here the information is direct as to the person charged. It may be open to the criticism that it is not as direct as it might have been as to the offense charged. Had that question been raised on the motion to quash, it could have been corrected readily. Apparently appellant then thought the charge was sufficiently direct. There is no suggestion now that he was in any way hampered in his defense by the lack of a more direct charge. Had the question been specifically and directly raised, there is authority to the effect that the information was not so defective in this particular as to be in violation of the statute. (*State v. Hewes*, 60 Kan. 765, 57 Pac. 959; *State v. Justus*, 86 Kan. 848, 122 Pac. 877; *State v. Hutzel*, 108 Kan. 456, 195 Pac. 887; *State v. Sanders*, 127 Kan. 481, 274 Pac. 223; 31 C. J. 764, 771.) The first count of the information was substantially in the language of the statute. Ordinarily that is sufficient. (*State v. Wahl*, 118 Kan. 771, 772, 236 Pac. 652.) If there was any defect in this regard it was one that did not affect the substantial rights of appellant, and by statute (G. S. 1935, 62-1718) this court must give judgment without regard to it.

The evidence tending to support the verdict may be summarized as follows: For several years prior to the date of the fire in question appellant and his wife lived in a one-story cottage in Elkhart, the title of the property being in the name of the wife. The reasonable market value of the property at the time of the fire was $500 and of the contents about $600. There were unpaid taxes on the property since 1930 aggregating $419.41. About a month earlier appellant stated to one of his neighbors that he would like to get as large a loan on the property as he could and let the mortgage company take it. On January 15, 1938, appellant took out a new insurance policy for $1,500 on the residence and $1,500 on the contents, which previously had been insured for $1,000. On February 2, 1938, about 11 o'clock a. m., fire was discovered burning from the inside through the walls of the house, and the fire department

was called. The chief of the fire department, the sheriff and others entered the building. The house contained a bedroom, living room, breakfast room, kitchen and basement. In the bedroom all the furniture had been pulled from against the walls, doors opened, bedding removed from the bed and placed on the floor, which extended into the living room, and from there one line of bedding and clothing led to the far corner of the living room. Another chain of bedding and clothing led through the breakfast room and the kitchen and down the stairway to the basement. From over the stairway leading to the basement was hanging a blanket connected with the other chain of clothing. In the living room an upholstered wicker set was piled together in the center of the room and connected with the clothing on the floor. All the bed clothing, rugs and furniture had been soaked with some inflammable substance believed to have been kerosene and crank case drainings. In the kitchen on the top of the worktable was a partially burned candle, originally twelve inches in length. On the kitchen cabinet was an old cap, a ball of twine and a dish towel leading from the candle to the window curtain. The fire had burned a large hole in the floor of the bedroom, extended into the closet, and burned clothing, books and magazines which had been dumped from the shelves to the floor, and had burned a hole through the closet wall to the outside of the building, where the fire was discovered. In the basement a separate fire was discovered in a feather mattress. A wick made of clothing and bedding extended from the bed in the basement to near the burned hole in the bedroom floor. In the basement were two trunks containing paper, boxes, clothing, dresses. These were open, tipped over, and the contents had the oil substance poured on them. In the bedroom and closet the fire had burned through the ceiling into the attic. The outside doors of the house were locked. All of the outside openings of the house had been taped to keep out drafts and dust, except the two doors. In the trial of the case it was admitted by the defense that the fire was of incendiary origin. The state's evidence disclosed that defendant was last seen at the residence at 1:30 p. m., January 29. He had told the sheriff that he and his wife left Elkhart that afternoon and drove to Stafford that night. There was no further direct testimony as to defendant's whereabouts until after the fire. The state made no effort to show that he was at the house in question from January 29 to February 2. The defense offered no alibi, hence the question of

his whereabouts during this time was not in issue. At several places about the house was evidence of a burned candle, and in the basement was a carton which had contained twelve candles one inch in diameter and twelve inches long. The testimony was that it would take a candle of that size and texture from six to twelve hours to burn down, but if two or more of them had been fastened together, as it is possible they were, that time would be multiplied by the number of candles. There was much evidence that the fire had burned slowly, because books, papers and clothing smoulder and burn for a long time unless there is plenty of fresh air. There was evidence that there had been intense heat in the rooms. The window curtains would crumble when touched, and the varnish on the woodwork and furniture had the appearance of an intense heat. A jar was found in the house which contained oil. One fire had been started by a candle in an ash tray at the end of a blanket in the living room. There was an outbuilding used as a barn in which was found a ten-gallon kerosene can containing about seven gallons of kerosene and gasoline. It appeared to have been tipped over and poured from. There were tracks near it which defendant admitted were his. There were no other tracks in the building. A few days prior to the fire defendant had visited the fire department and made inquiry of the condition of the fire equipment, and learned that the siren was out of use. Appellant had had three previous fires at Elkhart, one at his dairy barn and two at his laundry. At the latest of these the laundry was completely destroyed and appellant collected insurance. The laundry building was constructed of sheet-iron roofing and sides, cement floor, and the only lumber was studding and rafters. That fire had spread rapidly. It had extended throughout the building by the time the fire department arrived. Shortly before that appellant had solicited a former employee of the laundry to burn the laundry, stating it was insured and that it was worth more burned down than standing. He showed the former employee two five-gallon cans of kerosene and suggested that it be started at night; that appellant would be out of town and the employee could get away. He was unemployed at that time and appellant promised to get him a job in Kansas City. The former employee refused, and appellant then asked him to say nothing about it, not even to his wife. Soon after that fire the former employee met appellant, who seemed to be pleased with the situation.

After the fire at his residence, discovered February 2, 1938, de-

fendant met Henry Wagner, whom he knew, and tried to get Wagner to finish burning the building, and offered Wagner $100 to do that, and stated that he, appellant, could get out of the trouble if the building were burned completely down. Appellant had been arrested, charged with the burning of the building, prior to that time. There is evidence tending to show that he made a somewhat similar proposition to another person, which was refused, and that he later took Wagner to an attorney he had employed in Oklahoma in an effort to have Wagner make some statement in writing favorable to appellant. No evidence was offered on behalf of defendant. We think the evidence sufficient to go to the jury and sufficient to sustain the conviction.

Appellant argues about the long time which elapsed between 1:30 p. m., January 29, and 11 o'clock a. m., February 2, and points to the testimony that the candles, under normal conditions, would burn only from six to twelve hours. No doubt this argument was made to the jury. It overlooks the fact that the material first fired by the candles normally would burn slowly, and in a small residence, which was sealed almost tight from outside air, the burning would be much slower than under normal conditions.

The information charged the date of the offense to be "on or about the 29th day of January, 1938." Because of that, defendant requested an instruction to the effect that the term used in the information "refers solely to a date on or prior to the 29th day of January, 1938, and that no acts on the part of said defendant occurring subsequent to the 29th day of January are to be considered by you in arriving at your verdict." The court very properly declined to give such an instruction.

Appellant complains of a question asked of a witness called as an expert on the length of time it would take the candles to burn and the fire to progress to the condition in which it was found on the morning of February 2, and the answer of the witness to the question, as follows: "It would be indefinitely. There is a possibility of a fire smouldering a week, or two weeks." We see nothing wrong either with the question or the answer.

Upon the hearing of the motion for a new trial several affidavits were offered in appellant's behalf. We have examined these carefully and find nothing in them which required, or would have justified, the granting of a new trial. We find no error in the record. The judgment of the court below is affirmed.