No. 42,743

THE STATE OF KANSAS, *Appellant,* v. RONNIE HILL, *Appellee.*

(369 P. 2d 365)

Opinion filed March 3, 1962.

*A. K. Stavely,* assistant attorney general, of Topeka, argued the cause, and *William M. Ferguson,* attorney general, of Topeka, and *Richard L. Mankin,* county attorney, of Emporia, were with him on the briefs for the appellant.

*Robert H. Nelson,* of Wichita, argued the cause, and *W. A. Kahrs, H. W. Fanning,* and *Richard C. Hite,* of Wichita, were with him on the briefs for appellee.

*James W. Porter* and *Frank C. Sabatini,* of Topeka, were on briefs for Respect Sunday Committee of Topeka, Kansas, as *amici curiae.*

*Dale Kidwell, George W. Ball, Jack H. Greene* and *Kenneth Nohe,* of

Wichita, were on briefs for Wichita Respect Sunday Committee, Inc., as *amici curiae.*

*Wendell L. Garlinghouse, Warren W. Shaw, William Hergenreter* and *Carl W. Quarnstrom,* of Topeka, were on briefs *amici curiae.*

The opinion of the court was delivered by

FATZER, J.: This is an appeal by the state from an order of the district court of Lyon County, Kansas, discharging the defendant, Ronnie Hill. The information charged that on July 30, 1961, the defendant, the assistant manager of the Safeway Store at Emporia, did unlawfully and willfully expose to sale and did sell certain merchandise, to-wit: Three packs of Chiclets chewing gum, one box of Blue Cheer soap, and one can of Dash dog food, on the first day of the week, commonly called Sunday, the said merchandise not being within the exemption of G. S. 1949, 21-956, contrary to law. (G. S. 1949, 21-955.)

On August 10, 1961, the defendant appeared in person and with counsel and entered a plea of not guilty. The state and the defendant entered into a written statement of fact which was agreed to, and a jury being waived, trial was by the court. Thereafter the defendant filed a motion to quash the information, the ruling on which was reserved by the court until the completion of argument by counsel. The defendant also filed a motion to dismiss the information and to discharge him on the grounds that G. S. 1949, 21-955, on which the information was based, when construed with G. S. 1949, 21-956, is so vague, indefinite and uncertain that he was unable to ascertain what was or was not permitted to be sold under the statute in violation of rights granted him under sections one and ten of the bill of rights of the constitution of Kansas and the fifth (*sic*) amendment to the constitution of the United States.

At the conclusion of the argument the district court overruled the defendant's motion to quash the information, but sustained his motion to be discharged. In rendering judgment the court filed a written memorandum opinion in which it concluded that "the exception to the statute in question contains words that are so general, vague and indefinite that individuals charged with administering this penal statute are unable to determine the meaning of the same. The statute is declared inoperative and void. . . . Defendant *is* discharged." The state timely appealed, having reserved the question. (G. S. 1949, 62-1703, *third.*)

The crux of the appeal is the validity of G. S. 1949, 21-955 and

21-956, under which the prosecution was commenced, and it follows that if the statute can be sustained, the information cannot be questioned since it followed the language of the statute. (*State v. Ashton,* 175 Kan. 164, 173, 262 P. 2d 123.) In seeking reversal, the state concedes that although the statute, in substantially the same form, has been a part of the law of the territory and state of Kansas since 1855, it has not heretofore been challenged on the grounds presently urged. Hence, our previous decisions are not helpful in deciding the constitutional questions presented.

As preliminary to discussing those questions we note briefly the historical background of the sections directly involved. They were originally enacted in 1855 (L. 1855, Ch. 53, Sec. 34 and Sec. 35) by the so-called "bogus legislature" and were taken bodily from the Missouri statute, where they were originally enacted in 1825, and, with some amendments, continue to be the law of that state. When enacted in 1855 they read:

"SEC. 34. Every person who shall expose to sale any goods, wares or merchandise, or shall keep open any ale or porter house, grocery, or tippling shop, or shall sell or retail any fermented or distilled liquor, on the first day of the week, commonly called Sunday, shall, on conviction, be adjudged guilty of a misdemeanor, and fined not exceeding fifty dollars.

"SEC. 35. The last section shall not be construed to prevent the sale of any drugs or medicines, provisions, or other articles of immediate necessity."

The sections were repealed by the Territorial Legislature of 1859 (Ch. 89, Sec. 1, General Laws of Territory of Kansas, 1859) and were re-enacted at that session (Ch. 28, Sec. 248 and Sec. 249). They were embodied in our General Statutes of 1868 in Chapter 31, Sections 258 and 259 relating to crimes and punishments. They remained unchanged and were included in all of the subsequent general statutes of the state until the Commission to Revise the General Statutes of 1923 revised the first section (21-955) by eliminating reference to intoxicating liquors which were covered by other laws, but the second section (21-956) was not changed. As revised, they were embodied in the Revised Statutes of 1923. The sections appear in the General Statutes of 1949 and read:

"21-955. Every person who shall sell or expose to sale any goods, wares or merchandise, or shall keep open any grocery, on the first day of the week, commonly called Sunday, shall on conviction be adjudged guilty of a misdemeanor, and fined not exceeding fifty dollars.

"21-956. The last section shall not be construed to prevent the sale of any drugs or medicines, provisions, or other articles of immediate necessity."

In support of its contention the district court erred in discharging

the defendant, the state contends that the sections involved are independent statutes; that 21-955 makes it an offense to sell or expose to sale on Sunday any goods, wares or merchandise, and that those terms have well-settled meanings in law; that there is nothing vague, uncertain or indefinite about them, but actually, and with a reasonable degree of certainty, they define the offense intended to be prohibited. It asserts that 21-956 neither creates an offense nor imposes a penalty, and does nothing more than withdraw from the scope of 21-955 the sale or exposure to sale on Sunday of "any drugs or medicines, provisions, or other articles of immediate necessity" and lawfully permits their sale notwithstanding the broad prohibition of 21-955; that 21-956 is merely defensive and if a defendant can show the articles he is charged with selling were those excepted by that section, he cannot be convicted, but the burden rests upon the seller to establish the need for the articles was that of the purchaser and resulted from circumstances in the nature of an unexpected emergency, or if foreseen by the purchaser, was such that it could not have been reasonably provided against, and urges that no sufficient reason exists to hold the statute vague or ambiguous.

The defendant strenuously argues the two sections must be construed as one statute to determine whether an offense has been committed; that while 21-956 excepts certain articles enumerated in 21-955, it has precisely the same meaning as if it were appropriately incorporated in that section; that as so construed, the statute is vague and indefinite and no adequate practical meaning can be found for the phrase "or other articles of immediate necessity" because the word "necessity" as used, is flexible, relative and impossible to define and has no reference to any objective standards; consequently, the statute fails to inform those subject to its provisions of the nature and cause of the accusation against them; it fails to inform enforcement agencies of a standard by which they can reasonably ascertain if there has been a breach of the law, and delegates to judges and juries the right to determine what activities are or are not proscribed in violation of sections one and ten of the bill of rights of the constitution of Kansas and the due process clause of the fourteenth amendment to the constitution of the United States.

In considering the contentions of the parties, we are mindful of the rule that the constitutionality of a statute is presumed and that all doubts must be resolved in favor of its validity, and before it may be stricken down it must clearly appear it violates the defendant's rights secured by the fundamental law. (*State, ex rel., v.*

*Fadely,* 180 Kan. 652, 308 P. 2d 537; *Quality Oil Co. v. du Pont & Co.,* 182 Kan. 488, 322 P. 2d 731.) Moreover, this court may not substitute its judgment for that of the legislature as to whether unrestricted Sunday sales are good or bad for the social, moral and economic life of the state, nor do we enter into the debate on that question and decide in the light of present-day conditions for or against the wisdom of that policy. Whether social, moral and economic conditions have been bettered by an enactment of the law is not a judicial question. Long ago this court declared that the purpose of the "Sunday Closing Law" was to secure an opportunity for rest one day a week for the good of the individual and the state (*Topeka v. Crawford,* 78 Kan. 583, 96 Pac. 862; *Ewing v. Halsey,* 127 Kan. 86, 272 Pac. 187); that it is within the constitutional power of the legislature to require cessation of labor one day in seven and to designate the day of rest (*State v. Blair,* 130 Kan. 863, 288 Pac. 729); that it is the public policy of this state that Sunday is not a day for the transaction of business (*Dobson v. Wilson & Co., Inc.,* 152 Kan. 820, 170 P. 2d 676), and that the Sunday closing laws are within the police power of the state (*State v. Haining,* 131 Kan. 853, 293 Pac. 952). Nor are we required to decide whether a Sunday closing law violates the first amendment to the constitution of the United States as made applicable to the states by the fourteenth amendment, as being a law with respect to the establishment of religion, or prohibiting the free exercise thereof, since that question has been answered in the negative by the supreme court of the United States in the recent cases of *McGowan v. Maryland,* 366 U. S. 420, 6 L. Ed 2d 393, 81 S. Ct. 1101; *Braunfeld v. Brown,* 366 U. S. 599, 6 L. Ed. 2d 563, 81 S. Ct. 1144, and *Gallagher v. Crown Kosher Market,* 366 U. S. 617, 6 L. Ed. 2d 536, 81 S. Ct. 1122. Hence, our decision is limited solely to whether Sections 21-955 and 21-956 are in conflict with either the constitution of Kansas or the fourteenth amendment to the constitution of the United States on the grounds urged by the defendant.

Before reaching the merits of the appeal, two points raised require attention. It is urged that the decision of the supreme court of Missouri in the recent case of *State v. Katz Drug Co.,* 352 S. W. 2d 678, sustaining the constitutionality of its statute which Kansas originally adopted in 1855, is controlling, and compels a reversal. It is urged that the rule of construction that a statute adopted from another state will be presumed to have been adopted with the construction placed on it by the courts of that state, is applicable. In

that case the supreme court of Missouri concluded that the statute was not void for vagueness as failing to give notice to the defendant of the nature and cause of the accusation against it and that the statute afforded due process of law as required by the fourteenth amendment.

This court has recognized and applied the rule that a statute adopted from another state carries with it the construction placed upon it by the courts of that state (*Bemis v. Becker,* 1 Kan. 226; *Stebbins v. Guthrie,* 4 Kan. 353; *Webb v. Comm'rs of Butler Co.,* 52 Kan. 375, 34 Pac. 973; *Nelson v. Stull,* 65 Kan. 585, 68 Pac. 617, 70 Pac. 590; *McHenry v. Hubbard,* 156 Kan. 415, 420, 134 P. 2d 1107), but the rule is not absolute and is subject to exceptions. One exception is that the construction of a statute by the highest court of the original state *after* it is adopted by another has no controlling effect on the adopting state, although it may be persuasive where it is supported by logic and good reasoning. (82 C. J. S., Statutes, § 373 b, p. 867; *State v. O'Donnell,* 116 Kan. 182, 185, 225 Pac. 1078; *McHenry v. Hubbard,* supra.) But another and compelling reason exists why the rule has no application here. The argument in support of it presumes a doctrine which, if followed, would substitute the supreme court of Missouri as a tribunal to determine the grave question whether the statute contravenes the constitution of Kansas in place of the supreme court of this state. The construction of a statute, the function of a court to ascertain a statute's scope and meaning, is not to be confused with the duty of determining its validity when measured by constitutional guarantees. (14 Am. Jur., Courts, § 86, p. 300; *Williams v. State,* 81 N. H. 341, 125 A. 661, 39 A. L. R. 490; *Boyd v. Ritter L. Co.,* 119 Va. 348, 89 S. E. 273, 275, L. R. A. 1917A, 94.)

It is also urged that since the statute is over a century old and that the Kansas courts have been able to judicially apply it over that period is convincing and persuasive proof of its validity. It is true that previous decisions have been rendered in criminal cases involving the application of the statute, but, as previously noted, the state concedes it has not heretofore been challenged on the constitutional grounds presently urged. Courts are loath to hold statutes to be unconstitutional, and this court has repeatedly held that there is time enough for it to pass upon the validity of a statute when its constitutionality is raised by one who claims injury by it. No doubt if the constitutional questions here raised had been previously presented to this court or specifically pointed out, the issues would have

been determined, but the fact that an unconstitutional statute has been enacted and has remained in the statute books for a long period of time in no sense imparts legality. (*Wyandotte County Comm'rs v. General Securities Corp.*, 157 Kan. 64, 79, 138 P. 2d 479.) Age does not invest a statute with constitutional validity, neither does it rob it of such validity. (*State v. Rogers*, 142 Kan. 841, 848, 52 P. 2d 1185.)

We turn now to the contentions of the parties, and first determine the merits of the state's contention that 21-956 is a separate and independent statute. As previously indicated, it contends that, inasmuch as 21-956 is merely defensive and an independent statute, the constitutionality of it should have no effect on 21-955. We do not agree. The fundamental rule of construction is to ascertain the intention of the lawmakers in order that the true meaning of the legislature may be determined. To accomplish that purpose all parts of the act relating to the subject should be considered together. (50 Am. Jur., Statutes, § 352, p. 350.) By providing that 21-955 shall not be constructed to *prevent* the sale of any drugs or medicines, provisions, or other articles of immediate necessity, 21-956 is an exception to the former section. (*State v. Blair*, supra, p. 866.) The office of an exception in a statute is well understood. It is intended to exempt something from the scope of the general words of a statute or to qualify or restrain the generality of the substantive enactment to which it is attached. The relative position of an exception is unimportant since the act must be construed as a whole. It may, as here, appear in a section by itself, and when that is done it has precisely the same meaning that it would have if the exception were appropriately incorporated in the other section. (50 Am. Jur., Statutes, § 431, p. 451.) We conclude that 21-956 is not merely defensive as the state contends, but constitutes an integral part of the offense defined. As thus construed, the burden rests upon the state to allege and prove that the articles sold or exposed to sale on Sunday were of the kind and character included in the statute's prohibition and were not those excepted.

Is the statute indefinite, uncertain and void for vagueness? Does it lack, as the defendant contends, ascertainable standards of guilt by establishing what persons are included or what acts are prohibited by its provisions in violation of section ten of our bill of rights and the due process clause of the fourteenth amendment? It is well recognized that in order to satisfy the constitutional requirements of due process, a state statute must be sufficiently explicit in its de-

scription of the acts, conduct or conditions required or forbidden, to prescribe the elements of the offense with reasonable certainty. The standards of certainty in a statute punishing for criminal offenses is higher than in those depending primarily upon civil sanction for enforcement. The offenses must be defined with appropriate definiteness. There must be ascertainable standards of guilt, but impossible standards of specificity are not required. Men of common intelligence cannot be required to guess at the meaning of the statute. The vagueness may be for uncertainty with respect to persons within the scope of the statute or in regard to applicable tests to ascertain guilt. The test is whether the language conveys a sufficient definite warning as to the proscribed conduct when measured by common understanding and practice. (*United States v. Cardiff*, 344 U. S. 174, 97 L. Ed. 200, 73 S. Ct. 189; *Cramp v. Board of Public Inst. of Orange County, Fla.*, 386 U. S. 278, 7 L. Ed. 2d 285, 292, 82 S. Ct. 275; *Winters v. New York*, 333 U. S. 507, 92 L. Ed. 840, 68 S. Ct. 665; *Champlin Rfg. Co. v. Commission*, 286 U. S. 210, 76 L. Ed. 1062, 52 S. Ct. 559, 86 A. L. R. 403.) In *United States v. Cardiff*, supra, Mr. Justice Douglas said:

". . . The vice of vagueness in criminal statutes is the treachery they conceal either in determining what persons are included or what acts are prohibited. Words which are vague and fluid (cf. *United States v. Cohen Grocery Co.*, 255 U. S. 81) may be as much of a trap for the innocent as the ancient laws of Caligula. . . ."

In *State v. Blaser*, 138 Kan. 447, 26 P. 2d 593, which quoted from and followed *Connally v. General Const. Co.*, 269 U. S. 385, 70 L. Ed. 322, 46 S. Ct. 126, it was said:

" '1. A criminal statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must guess at its meaning and differ as to its application, lacks the first essential of due process of law. . . .' " (l. c. 448.)

That holding was adhered to in *State v. Rogers*, 142 Kan. 841, 52 P. 2d 1185; *State v. Carr*, 151 Kan. 36, 37, 98 P. 2d 393; *State v. Davidson*, 152 Kan. 460, 461, 105 P. 2d 876; *State v. Ashton*, 175 Kan. 164, 262 P. 2d 123, and *State, ex rel., v. Fleming Co.*, 184 Kan. 674, 682, 339 P. 2d 12. See, also, *State v. O'Connor*, 186 Kan. 718, 353 P. 2d 214.

Section ten of our bill of rights provides that "In all prosecutions, the accused shall be allowed . . . to demand the nature and cause of the accusation against him." The language of the section is similar to language contained in the sixth amendment to the con-

stitution of the United States applicable to prosecutions under federal law. The section requires a statement of the crime charged but does not indicate how much detail or specificity is essential to a criminal pleading. (*State v. Cassady,* 12 Kan. 550.) Ordinarily an information charging a crime in the language of the statute is sufficient. (*State v. Harris,* 150 Kan. 536, 95 P. 2d 269.) However, it has been held that an information in the language of a statute which does not name the acts which are prohibited, does not inform the accused of the nature and cause of the accusation against him. (*State v. Satterlee,* 110 Kan. 84, 202 Pac. 636; Anno: Indefiniteness of Penal Laws, 96 L. Ed. 374; Vol. 1, Wharton's Criminal Law and Procedure, § 18, p. 33.) Whether a statute is vague and indefinite and therefore fails to inform the accused of the nature and cause of the accusation against him as required by section ten is determined by the test applicable to whether the statute violates due process of law under the fourteenth amendment. That amendment grants no greater protection to the accused in that respect than does section ten of the bill of rights of the constitution of Kansas.

The statute before us is dragnet in scope but is limited in application by exceptions. It defines the offense proscribed by exclusion rather than by inclusion, and makes Sunday sales both lawful and unlawful, that is, it prohibits the sale or exposure to sale of *all* goods, wares and merchandise, but authorizes property of three general classifications—drugs or medicines, provisions, or other articles of immediate necessity—to be sold or exposed to sale with impunity. The gist of the offense is the sale or exposure to sale of property *not* excepted. In that posture the statute is vague and indefinite unless a line can be found which separates with reasonable certainty the lawful from the unlawful, and the only criterion afforded lies in the definition of the property excepted. The line separating the two must be definite and extend to each of the three classes of property excepted; its existence to one or two is insufficient. Notwithstanding what has heretofore been said and held to the contrary, it is obvious that each class of property excepted was intended to mean articles of property not included in the other, that is, "provisions" means something other than "drugs or medicines" and the phrase "or other articles of immediate necessity" means something other than "drugs or medicines" and "provisions." To give the statute any other meaning would require a strained construction of it, not warranted by its express language.

As to the claim of vagueness, we are not troubled by the term

"drugs or medicines." It is a generic term of comprehensive significance. Concededly, no one would have trouble defining it. It has an objective meaning which is well understood by men of common intelligence. If drugs or medicines were the only class of property excepted, a line between the lawful and the unlawful could readily be ascertained. The word "provisions" has an objective meaning, but as used in the statute, it is difficult to judicially define. Webster's International Dictionary, Second Edition, defines it as "Act of providing, as the necessities of life, or of making preparation, as for a journey; a store or stock of needed materials prepared beforehand; especially a stock of food; hence, any kind of edibles collected or stored; food as provision laid in large, for man and beast." Whatever else the word may mean, this court has defined it to include any groceries, meats or vegetables purchased for human consumption and also to include food for beasts. (*House v. City of Topeka,* 178 Kan. 284, 286 P. 2d 180.) While criminal statutes are to be strictly construed and courts should not extend them to embrace acts or conduct not clearly included within their prohibitions (*State v. Waite,* 156 Kan. 143, 131 P. 2d 708), and exceptions in penal statutes are to be construed liberally in favor of persons charged with violations of the statutes (82 C. J. S., Statutes, § 382, p. 893), it would seem that the statute might be sustained against the claim of vagueness as to the items of property included in the word "provisions," notwithstanding there may be marginal cases in which it would be difficult to determine the side of the line a particular fact situation falls. But the phrase "or other articles of immediate necessity" has no objective meaning. There is no common, generally-understood meaning to this all-embracing term. It becomes meaningful only when applied to a specific article purchased under varying circumstances, which leaves open the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can adequately guard against. It could mean a variety of things to many different people. What may be an article of immediate necessity for one person to purchase on Sunday may be completely immaterial and even unwanted by another. Thus, whether an article is of immediate necessity depends solely upon the subjective judgment of one person based upon that of another. The phrase is so general and indefinite as to embrace not only acts properly and legally punishable, but those which are lawful and not punishable. In short, the statute prescribes punishment for anyone who sells or exposes to sale goods, wares or mer-

chandise which are *not* "other articles of immediate necessity" but does not define by any objective standard what constitutes a sale of property of that character, thus necessarily leaving the court and jury to determine what is or is not a sale of "other articles of immediate necessity" in any particular case. After the sales alleged in an information or complaint are established by evidence on behalf of the state, *it yet remains for the court and jury to say whether those acts are the ones that are prohibited by law.* (*State v. Satterlee,* supra.) To attempt to enforce the statute would be the equivalent of an effort to carry out a statute which in terms merely penalized and punished all acts detrimental to the public interest when unjust and unreasonable in the estimation of the court and jury. (*United States v. Cohen Grocery Co.,* 255 U. S. 81, 65 L. Ed. 516, 41 S. Ct. 298, 14 A. L. R. 1045.)

While the line of demarcation between the valid exercise of police power and constitutional guarantees is not always well defined, and courts must accord to the legislature a wide range of power to classify and delineate in declaring the public policy of the state, we cannot consent to the legislative invasion of constitutional guarantees to the extent here evidenced. Although the sale of goods on Sunday constituted an offense under the common law, and it is well settled that not every uncertainty which may exist in the operation or application of a criminal statute renders it void (*State v. Ashton,* supra), nonetheless, we are of the opinion the statute here considered (G. S. 1949, 21-955 and 21-956) is so vague, indefinite and uncertain that it fails to inform men of common intelligence what conduct on their part will render them liable to its penalties; that they must guess at its meaning and differ as to its application, and that it provides no reasonable definite standard of guilt which apprises them of the nature and cause of the accusation against them in violation of section ten of the bill of rights of the constitution of Kansas, and the fourteenth amendment to the constitution of the United States which provides that no state shall deprive any person of life, liberty or property without due process of law.

The state concedes that if the defendant's challenge of the statute is sustained, it is unnecessary to determine whether the district court erred in discharging him for any other reason. In view of the conclusion just announced, the district court did not err in declaring the statute inoperative and void and discharging the defendant.

The judgment is affirmed.